**Monica M. ZIPF, Appellant,**

v.

**AMERICAN TELEPHONE AND TELEGRAPH CO.**

No. 85–3420.

United States Court of Appeals, Third Circuit.

Argued June 2, 1986.

Decided Aug. 27, 1986.

John E. Quinn (Argued), Evans, Rosen & Quinn, Pittsburgh, Pa., for appellant.

Walter G. Bleil (Argued), Scott F. Zimmerman, Reed, Smith, Shaw & McClay, Pittsburgh, Pa., for appellee.

Before GIBBONS, BECKER, and STAPLETON, Circuit Judges.

**OPINION OF THE COURT**

STAPLETON, Circuit Judge.

In this appeal we are called upon to decide whether a participant in a federally regulated employee benefits plan must exhaust internal administrative remedies before filing suit in federal court for alleged interference with her statutory rights. We find that no exhaustion is required, and so reverse the judgment of the district court.

## I

Monica M. Zipf, appellant, was employed by the American Telephone & Telegraph Company, appellee ("AT & T"), from March 21, 1969 until April 5, 1984. In 1981, Zipf was diagnosed as suffering from rheumatoid arthritis. This illness, and its episodic "flare-ups," occasionally caused Zipf's absence from work. Her medical condition led to her taking a disability leave of absence from her employment, beginning on September 27, 1982. She remained on disability leave, which included a period of maternity leave, until, with the permission of her physician, she returned to work in July 1983. Zipf received disability benefits under the terms of AT & T's Sickness and Accident Disability Benefit Plan ("the plan") for at least part of this period.

After Zipf's return to full-time status, she continued occasionally to miss work on account of her illness. On Friday, March 30, 1984, Zipf's rheumatoid arthritis became aggravated and she began a period of absence that continued until the final day of her employment, Wednesday, April 5, 1984. On that day, Zipf's supervisor visited her at home and informed her that a decision had been made to terminate her because of her "excessive absenteeism."

Zipf alleges that under the terms of AT & T's plan, she would have been entitled to disability benefits beginning on the eighth calendar day of absence from work. As an employee with more than fifteen years of service with AT & T, she was potentially eligible for substantial benefits, in an amount equal to her full rate of pay for up to 26 weeks and at half pay for the following 26 weeks. Moreover, if her disability had thereafter continued to prevent her return to work, she then might have been able to obtain benefits under AT & T's Long Term Disability Plan.

Zipf's eighth day of absence from work as a result of illness would have been April 6, 1984. Zipf asserts that she was terminated on the seventh calendar day of absence, April 5, 1984, to prevent her from potentially qualifying for the substantial benefits for which she would have become eligible on April 6 and to eliminate a "disability problem." Zipf filed a complaint against AT & T in the district court, alleging that she had been fired in violation of state law and Section 510 of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1140, the provision of that Act which protects employees from interference with their statutory and plan rights. Zipf sought reinstatement, backpay, and other equitable restitution.

Following discovery, AT & T moved for summary judgment. It argued that Zipf failed to exhaust the internal administrative remedies made available by the plan and that she should not be permitted to bring this suit until she has done so. Second, AT & T asserted that, because there are no genuine issues of material fact, it was entitled to summary judgment as a matter of law.

The district court granted summary judgment to AT & T on its exhaustion theory, without reaching the company's alternative ground, and dismissed the Section 510 claim without prejudice. The court also dismissed Zipf's pendent state law claim as preempted by ERISA. Zipf has appealed the district court's ruling that the failure to exhaust administrative remedies barred her Section 510 suit. She has not appealed the dismissal of her pendent state claim for wrongful discharge.

The parties agree that Zipf was a participant in the Sickness and Accident Disability Benefit Plan, a plan subject to ERISA. As mandated by ERISA Section 503, 29 U.S.C. § 1133, the plan includes claims and appeals procedures which give participants certain rights regarding the determination of eligibility for disability benefits.[1] AT &

---

1. The plan summary states that employees have the "right under ERISA and the Disability Benefit Plan to file a written claim for payment of benefits under the Plan.... If a claim for benefits is denied in whole or in part, the claimant

... may appeal this denial...." The plan does not expressly require internal exhaustion nor does it assert that the appeal procedure is an employee's exclusive remedy. The plan summary states "No one, including your employer, ...

T admits that this plan provides disability benefits beginning on the eighth day of a disability only "so long as said employee remain[s] an employee for that eight (8) day period," a condition that Zipf did not satisfy. Zipf did not seek benefits under the plan before bringing this action.

## II

Zipf's federal claim is based upon Section 510 of ERISA which provides:

> [It is unlawful] for any person to discharge ... or discriminate against a participant or beneficiary ... for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan, this subchapter, or the Welfare and Pension Plans Disclosure Act.... 29 U.S.C. § 1140.

Congress enacted this section to prevent unscrupulous employers from discharging or harassing their employees in order to prevent them from obtaining their statutory or plan-based rights. *West v. Butler,* 621 F.2d 240, 244–26 (6th Cir.1980). This was done "in order to completely secure the rights and expectations brought into being by this landmark reform legislation." S.Rep. No. 127, 93d Cong., 2d Sess., *reprinted in* 1974 U.S. Code Cong. & Admin. News 4838, 4872.

This case presents two distinct exhaustion issues. The first is whether Zipf, before seeking judicial relief on her Section 510 claim, was required to submit that claim to the plan. In similar situations, the Seventh and Eleventh Circuits have held that such a submission to the plan should normally be required. *Kross v. Western Electric Co.,* 701 F.2d 1238 (7th Cir.1983) (affirming a district court decision requiring employee first to present his claim of discrimination to the plan); *Mason v. Con-*

*tinental Group, Inc.,* 763 F.2d 1219 (11th Cir.1985), *cert. denied* — U.S. —, 106 S.Ct. 863, 88 L.Ed.2d 902 (1986) (claims grounded in statutory provisions of ERISA should be required first to be brought through plan's appeals procedures). The Ninth Circuit has reached a contrary conclusion. *Amaro v. Continental Can Co.,* 724 F.2d 747 (9th Cir.1984) (claim arising from alleged breach of ERISA Section 510 not subject to exhaustion requirement). The second issue is whether Zipf, before seeking judicial relief on her Section 510 claim, must submit to the plan the question of whether she would have been eligible for benefits had she not been discharged.

The district court in this case resolved the first issue in favor of requiring exhaustion, relying primarily on our decision in *Wolf v. National Shopmen,* 728 F.2d 182, 185 (3d Cir.1984). We disagree with the district court's reading of that case. In *Wolf,* we held that a party bringing an action under ERISA section 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B), to enforce or clarify the terms of a benefit plan, must exhaust administrative remedies. *Wolf* does not govern actions, such as Zipf's, which are premised on Section 502(a)(3), 29 U.S.C. § 1132(a)(3) and are brought not to enforce the terms of a plan, but to assert rights granted by the federal statute.

We decline AT & T's invitation to find in ERISA an implied exhaustion requirement applicable to substantive rights conferred by that Act. First, we find no indication in the Act or its legislative history that Congress intended to condition a plaintiff's ability to redress a statutory violation in federal court upon the exhaustion of internal remedies. The provision relating to internal claims and appeals procedures, Section 503, refers only to procedures regarding claims for *benefits.*[2] There is no

---

may fire you or otherwise discriminate against you in any way to prevent you from obtaining a benefit or exercising your rights under ERISA.... If you are discriminated against for asserting your rights, you may seek assistance from the U.S. Department of Labor or you may file suit in Federal Court."

2. 29 U.S.C. § 1133, Section 503, reads:

In accordance with regulations of the Secretary, every employee benefit plan shall—

(1) provide adequate notice in writing to any participant or beneficiary whose claim for benefits under the plan has been denied, setting forth the specific reasons for such de-

suggestion that Congress meant for these internal remedial procedures to embrace Section 510 claims based on violations of ERISA's substantive guarantees.

█ On the contrary, the legislative history suggests that the remedy for Section 510 discrimination was intended to be provided by the courts. 2 *Legislative History of the Employee Retirement Income Security Act of 1974*, 1641–42 (1976) (remarks of Sens. Hartke and Javits).[3] Indeed, an amendment that would have created an administrative remedy for Section 510 claims, to be established by the Department of Labor, was defeated. *See Id.*, at 1774–75, 1835–37.[4]

Moreover, we believe this court has heretofore rejected the underlying premise of AT & T's argument in *Barrowclough v. Kidder, Peabody & Co., Inc.*, 752 F.2d 923 (3d Cir.1985). In *Barrowclough*, while recognizing the strong national policy favoring arbitration, we held that suits alleging violation of substantive rights conferred by ERISA can be brought in a federal court notwithstanding an agreement to arbitrate. We there observed:

> With the enactment of ERISA, we must now accommodate its policy of providing federal court access and federal law remedies to pension claimants and their beneficiaries with the federal policy favoring enforcement of arbitral agreements embodied in the Federal Arbitration Act, 9 U.S.C. §§ 1–13 (1982).
>
> We conclude the most reasonable accommodation is to hold that claims to establish or enforce rights to benefits under 29 U.S.C. § 1132(a) that are independent of claims based on violations of the substantive provisions of ERISA are subject to arbitration, (citations omitted) while claims of statutory violations can be brought in a federal court notwithstanding an agreement to arbitrate. (citations omitted) Under the distinction we make between statutory and contractual claims, ERISA neither completely supplants nor is completely subordinate to arbitration....

752 F.2d at 939.

Thus, in *Barrowclough*, we "drew a distinction ... between claims based on pension rights created by contract, which must be arbitrated [where the parties have so agreed], and claims based on purely statutory rights created by ERISA, which may be asserted in federal court directly." *DelGrosso v. Spang & Co.*, 769 F.2d 928, 932 (3d Cir.1985), *cert. denied* — U.S. —, 106 S.Ct. 2246, 90 L.Ed.2d 692 (1986). When a plan participant claims that he or she has unjustly been denied benefits, it is appropriate to require participants first to address their complaints to the fiduciaries to whom Congress, in Section 503, assigned the primary responsibility for evaluating claims for benefits. This ensures that the appeals procedures mandated by Congress will be employed, permits officials of benefit plans to meet the responsibilities properly entrusted to them, encourages the consistent treatment of claims for benefits, minimizes the costs and delays of claim settlement in a nonadversarial setting, and creates a record of the plan's rationales for denial of the claim. *See Wolf v. National Shopmen Pension Fund*, 728 F.2d 182, 185 (3d Cir.1984); *Grossmuller v. Internation-*

---

nial, written in a manner calculated to be understood by the participant, and

(2) afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review by the appropriate named fiduciary of the decision denying the claim.

3. Sen. Hartke. "Let me ask what administrative procedures are available to the employee [who raises a Section 510 claim]. Does he not have to go to court?

Sen. Javits: "Yes; but heretofore he had no remedy at all. I know the Senator was one of the forceful advocates of this right to go to court on the basis of race or sex discrimination. This gives the employee the same right."
2 Legislative History at 1641–42.

4. The legislative history upon which *Mason*, 763 F.2d at 1227 and *Amato v. Bernard*, 618 F.2d 559, 566–68 (9th Cir.1980), relied, while supporting the proposition that exhaustion should apply where a claimant seeks benefits, does not indicate a congressional intent that exhaustion of statutory claims be required.

*al Union,* 715 F.2d 853, 856–57 (3d Cir. 1983); *Amato v. Bernard,* 618 F.2d 559, 567 (9th Cir.1980); *see also Barrowclough,* 752 F.2d at 939.

However, when the claimant's position is that his or her federal rights guaranteed by ERISA have been violated, these considerations are simply inapposite. Unlike a claim for benefits brought pursuant to a benefits plan, a Section 510 claim asserts a statutory right which plan fiduciaries have no expertise in interpreting. Accordingly, one of the primary justifications for an exhaustion requirement in other contexts, deference to administrative expertise, is simply absent. Indeed, there is a strong interest in judicial resolution of these claims, for the purpose of providing a consistent source of law to help plan fiduciaries and participants predict the legality of proposed actions. Moreover, statutory interpretation is not only the obligation of the courts, it is a matter within their peculiar expertise. *Alexander v. Gardner-Denver Co.,* 415 U.S. 36, 57, 94 S.Ct. 1011, 1024, 39 L.Ed.2d 147 (1974).

These considerations, together with Supreme Court precedent pertaining to analogous statutory schemes,[5] supported the balance which we struck in *Barrowclough.* Each of these considerations and each of the cases relied upon in that case provide the same counsel here. Because we perceive no basis for striking a different balance in this context, we hold that an employee with a claim under Section 510 of ERISA need not submit that claim to the plan before seeking relief in a federal district court.

Nor are we persuaded by AT & T's alternative argument that Zipf at least should be required to submit to the plan the issue of whether she would have been eligible for benefits had she not been discharged. While plan fiduciaries, as we have noted, are particularly qualified to resolve issues of eligibility, we perceive no legitimate basis for requiring Zipf to petition them before pursuing her judicial remedy.

Zipf is making no claim for benefits and concedes that she is not entitled to disability payments. Under these circumstances there is simply no reason to believe that the plan fiduciaries will resolve the hypothetical issue of whether she would have been entitled to benefits had she not been discharged.

Moreover, contrary to AT & T's suggestion, a resolution of this hypothetical issue by the plan fiduciaries would neither "focus the issues" in Zipf's Section 510 suit nor otherwise materially aid the district judge in that suit. Section 510 itself indicates that the employee need not show that "but for" the unlawful interference, the employee would have been entitled to benefits. The statutory language forbids conduct taken for "the purpose of interfering with the attainment of any right to which such participant *may* become entitled," regardless of whether the interference is successful and regardless of whether the participant would actually have received the benefits absent the interference. Thus, Section 510 does not require Zipf to demonstrate that she would have been entitled to benefits on April 6, or at any other specific time.

It is, of course, true that the employee in a Section 510 suit needs to establish that, at the time of the alleged violation, he or she had the potential of receiving benefits. Otherwise, there can be no credible claim that the employer's discharge or harassment decision was motivated by a desire to prevent the employee from receiving his or her due. Nevertheless, cases in which the existence of such a potential is contested will be rare, and we think it unlikely that, resolution of that issue, when contested,

---

5. *See e.g., McDonald v. City of West Branch,* 466 U.S. 284, 104 S.Ct. 1799, 80 L.Ed.2d 302 (1984) (failure to prevail in arbitration cannot foreclose lawsuit based on same facts brought under 42 U.S.C. § 1983); *Barrentine v. Arkansas-Best Freight System, Inc.,* 450 U.S. 728, 101 S.Ct. 1437, 67 L.Ed.2d 641 (1981) (exhaustion of arbitration not a prerequisite to suit to enforce statutory rights under Fair Labor Standards Act); *Alexander v. Gardner-Denver Co.,* 415 U.S. 36, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974) (claim of race discrimination under Title VII not foreclosed by plaintiff's failure to prevail on the same claim brought under binding arbitration).

will present complex issues of plan interpretation, a matter reserved for the plan trustees in the first instance. *See Wolf v. National Shopmen Pension Fund,* 728 F.2d 182, 185 (3d Cir.1984). While we cannot rule out the possibility of a Section 510 suit which presents a substantial issue of plan interpretation, that possibility does not justify an across-the-board barrier to judicial relief.[6]

For these reasons, we hold that Zipf is not required first to exhaust her benefit plan's internal procedures before bringing her claim that her employer fired her to prevent her from obtaining disability benefits.

### III

■ AT & T argues, in the alternative, that we should uphold the district court's judgment because Zipf has not adduced any facts from which a reasonable jury could conclude that she had been terminated to keep her from obtaining the disability benefits. We disagree and find that disputes of material facts exist which prevent the entry of summary judgment. *Sames v. Gable,* 732 F.2d 49 (3d Cir.1984).

First, AT & T argues that Zipf concedes she was willing and able to return to work before the plan's waiting period ended. It asserts that this concession rebuts any inference that AT & T intended to fire her in order to prevent her from obtaining benefits. Even if the factual premise of this argument is accepted,[7] however, AT & T's conclusion does not follow. Whether or not she was disabled on April 6, Zipf's claim is that AT & T discharged her at that time not merely to prevent her from becoming eligible for benefits on April 6, 1984,

but also to "do away with the 'disability problem' that appellant presented." Accordingly, her ability to work on April 6 and 9, 1984, is not dispositive of AT & T's intent in discharging her. Furthermore, we understand Zipf to be arguing that AT & T believed that she was disabled when it fired her, and she contends that the decision to terminate her was made pursuant to that belief.

Second, AT & T argues that Zipf has presented nothing from which a jury could reasonably infer that AT & T's actions were motivated by a desire to prevent Zipf from becoming entitled to disability benefits, in April, 1984 or anytime thereafter. We disagree and point to two examples.

Zipf relies on certain statements made by her immediate supervisor, Robert Cain, at the time he communicated the company's discharge decision to her. She testified that Cain had suggested to her that she was being fired to prevent her from becoming eligible for disability benefits. Zipf also testified by deposition that:

> [Mr Cain] felt that I was being denied my disability benefits. Because I was that sick and I was going to go on disability, that I was being denied them. And he said on the Q.T., I should get a good lawyer.

AT & T argues that these statements are not probative of AT & T's intent because Hudson, Cain's supervisor, and not Cain, was the one who made the discharge decision. Assuming, arguendo, that Zipf has conceded that Cain was not involved in making that decision, a position on which we express no opinion, we would still find that these statements preclude the entry of summary judgment.

**6.** We acknowledge that cases may arise in which a Section 510 claim is so closely intertwined with a serious issue requiring interpretation of a benefit plan that a trial court could properly stay the statutory action pending resolution of the issue by the plan fiduciaries. *See Amaro,* 724 F.2d at 752–53 (suggesting that a trial court can stay a statutory claim that arises out of same facts presented in an ongoing administrative or arbitral proceeding). We are not confronted with such a case, however, and

we express no opinion with respect to the approach suggested in *Amaro.*

**7.** Zipf does not, in fact, concede that she was not disabled on April 6th. While she admits that her doctor would have permitted her to work on Friday, April 6 and Monday, April 9, 1984, this permission would have been given, according to Zipf, only because she was beginning a vacation, on doctor's orders, on Tuesday, April 10, 1984.

On the record before us, we believe that Cain's statements to Zipf would be admissible at trial under Fed.R.Evid. 801(d)(2)(D), as admissions of the company's agent designated to deal with Zipf regarding her termination, and which were spoken "concerning a matter within the scope of his agency." Even if Cain's statements were based solely on his reaction to remarks made to him by Hudson, they would still be admissible for Hudson too was acting within the scope of his agency.[8]

Furthermore, we believe that these statements are probative of Hudson's intentions regarding Zipf's discharge. Cain's statements indicate that, as Zipf's immediate supervisor, he was intimately involved in Hudson's decision and apparently was familiar with the factors that Hudson relied on in making that decision. Accordingly, his opinion concerning that decision and how it was made would be probative of the factors upon which Hudson relied. *See* Fed.R.Evid. 701.

We also think that Zipf would be permitted to introduce into evidence certain handwritten notes, allegedly prepared by Cain *post litem motam* to fabricate a record justifying the firing. AT & T argues that the notes would be inadmissible hearsay. However, we believe that Zipf would seek to introduce these notes at trial not "as proof of the matter asserted" in them, but rather, for the purpose of demonstrating when and why they were prepared—after the fact in an effort to fabricate the record—in order to prove consciousness of guilt. In our opinion, if submitted for this purpose, the hearsay issue would not arise.

## IV

For the reasons stated above, this court will reverse the judgment of the district court and remand the case for proceedings consistent with this opinion.

---

8. Moreover, as we held in *United States v. Ammar*, 714 F.2d 238, 254 (3d Cir.), *cert. denied* 464 U.S. 936, 104 S.Ct. 344, 78 L.Ed.2d 311 (1983), an out-of-court statement is admissible under Fed.R.Evid. 801(d)(2) without a showing that the declarant had personal knowledge of the matters asserted. Establishing the source of Cain's knowledge, accordingly, would not be a necessary predicate to the admissibility of his remarks to Zipf.