831 F.2d 1057
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Herbert L. CRAWFORD, Plaintiff-Appellant,
v.
The COLLEGE LIFE INSURANCE COMPANY OF AMERICA, Defendant-Appellee,
BALDWIN-UNITED LEASING CORPORATION, Defendant.
 No. 86-3088.
 United States Court of Appeals, Fourth Circuit.
 Argued Feb. 4, 1987.
Decided Oct. 21, 1987.
 
 Appeal from the United States District Court for the District of Maryland, at Baltimore. J. Frederick Motz, District Judge. (CA-JFM-82-2602).
 David Payne Sutton (John Perazich, Perazich and Wynn on brief), for appellant.
 Gil A. Abramson (Rachel E. Schwarz, Semmes, Bowen & Semmes on brief), for appellees.
 D.Md.
 REVERSED AND REMANDED.
 Before K.K. HALL and ERVIN, Circuit Judges, and HAYNSWORTH, Senior Circuit Judge.
 HAYNSWORTH, Senior Circuit Judge:
 
 
 1
 This ill-starred case deserves to be put to rest quietly and mercifully. The plaintiff has no reasonable hope of more than a Pyrrhic victory. Nevertheless, we reluctantly conclude that entry of summary judgment for the defendant was an inappropriate means of termination of the litigation.
 
 
 2
 I .
 
 
 3
 The case was brought under 42 U.S.C.A. Sec. 1981 for alleged racial discrimination in the termination of Crawford's employment by College Life Insurance Company of America. Approximately four years before his termination early in 1982, Crawford had been recruited by Cliff Turner, College Life's Director of Special Markets, to sell insurance in the company's new Federal Employees Insurance Program. Crawford proved very successful in selling policies in the new FEIP program. His overall sales volume made him one of College Life's top salesmen. In 1980 and again in 1981, he set new company records for the number of policies sold.
 
 
 4
 Nevertheless, the business he produced for the company proved to be unprofitable. He was the principal producer in the FEIP program, and it developed that the entire program was inflicted with a serious problem of persistency. It is expensive to place new policies in effect. The business is not profitable for the company unless the outstanding policies persist for several years. Policies in the FEIP proved to have a low persistency rate. Those sold by Crawford reflected the problem.
 
 
 5
 The fact that the program developed losses rather than profits led the company to a decision in late 1981 or early 1982 to completely abandon the program.
 
 
 6
 The fact that the program was abandoned for legitimate business reasons is unchallenged.
 
 
 7
 Apparently there would have been no lawsuit but for a combination of two things.
 
 
 8
 In a response to an interrogatory, Crawford said that Cliff Turner, the defendant's Director of Special Markets, would testify that Robert Buis, its Vice-President for Sales, in 1979, almost three years before Crawford's termination, had criticized Turner's recruitment of Crawford because of Crawford's race. According to Crawford, Buis reportedly told Turner in 1979, "[Y]ou will not recruit black agents and if you do, I will not approve their contracts." Buis also allegedly told Turner that Crawford should not have been engaged in the first place.
 
 
 9
 Buis denied having made any such statements, and the plaintiff did not produce anything from Turner. Thus, we have only Crawford's claim that Turner told him that Buis told Turner that black agents should not be recruited and that Crawford should not have been employed in the first instance.
 
 
 10
 With that background, Crawford's other factual claim is relevant. He claims that before his termination became effective he requested authorization to sell other forms of insurance but that he was denied that authorization.
 
 
 11
 In granting summary judgment, the district court concluded that Crawford's report of the statements allegedly made by Buis to Turner in 1979 was inadmissible hearsay. Even if they were admissible, he thought the statements irrelevant since the expression of racial bias went to the recruitment of new employees rather than to termination of old employees, while the direct reference to Crawford should be viewed as racially neutral. The district court also thought there was a complete failure of proof of damages since, soon after his termination by College Life, Crawford went to work for John Hancock Insurance Company where his earnings exceeded those he made at College Life.
 
 II.
 
 12
 At the time of oral argument, the court sua sponte raised the problem of a jurisdictional defect.
 
 
 13
 In his complaint against College Life, Crawford also made Baldwin-United Leasing Corporation, College Life's parent, an additional defendant. summary judgment went in favor of College Life but not in favor of Baldwin-United. Without certification by the district court under Fed. R. Civ. P. 54(b) or 28 U.S.C.A. Sec. 1292(b) (West Supp. 1987), we would have no jurisdiction to entertain this appeal because of a lack of finality as to all parties. See Robinson v. Parke-Davis & Co., 685 F.2d 912 (4th Cir. 1982); Smith v. Fairfax County School Bd., 497 F.2d 899 (4th Cir. 1974).
 
 
 14
 When the problem was raised, counsel for both parties stated that they would join in a motion to have the action dismissed as to Baldwin-united. Subsequently, a stipulation was filed on the basis of which the district court dismissed the action against Baldwin-United. under these circumstances, no purpose would be served by dismissal of this appeal. Since there is no longer any other defendant remaining in the case, we think we should proceed to the merits. See Gillespie v. United States Steel Corp., 379 U.S. 148, 152-54 (1964); Wahkiakum Band of Chinook Indians v. Bateman, 655 F.2d 176, 171 n.1 (9th Cir. 1981).
 
 III.
 
 15
 The question of admissibility of Crawford's statements of what Turner told him that Turner had been told by Buis raises potential hearsay problems of two different levels. They need not require exclusion of the evidence, however, if at each of the two levels, the statement is within one of the exceptions to the hearsay rule. United States v. Portsmouth Paving Corp., 694 F.2d 312, 321 (4th Cir. 1982). On the first level the statements allegedly made by Buis to Turner are not inadmissible hearsay. They are admissible either as admissions of a party-opponent under Fed. R. Evid. 801(d)(2)(D) or under the state of mind exception of Fed. R. Evid. 803(3). See Detroit Police Officers' Ass'n v. Young, 608 F.2d 671, 693-94 (6th Cir. 1979), cert. denied, 452 U.S. 938 (1981); Meschino v. International Telephone & Telegraph Corp., 563 F. Supp. 1066, 1072 (S.D.N.Y. 1983).
 
 
 16
 At the second level, Turner's alleged report of the Buis statements, the state of mind exception is not applicable, for the relevant state of mind is that of Buis, not that of Turner, but we think they were properly admissible as an admission by an adverse party.
 
 
 17
 Turner was the Director of Special Markets for College Life. He was responsible for recruiting people for the new FEIP program. It was he who engaged Crawford, and he was involved in the training of people who had been engaged in the FEIP program. Thus, Turner's recount of what Buis had told him in 1979 concerned a matter within Turner's scope of employment. Since Turner's statement to Crawford concerned matters within the area of Turner's responsibilities, evidence of those statements is admissible under Fed. R. Evid. 801(d)(2)(D). See Zipf v. American Telephone & Telegraph Co., 799 F.2d 889, 894-95 (3d Cir. 1986); see also Meschino, 563 F. Supp. at 1072.
 
 IV.
 
 18
 We cannot accept the defendant's contention that the Buis statements in 1979, if admitted, would be irrelevant as having no tendency to show racial discrimination in employment terminations. It is true that the specific direction of the statement was to the hiring of blacks rather than the termination of blacks employed earlier. The statement, however, is strongly indicative of racial bias in the employment of blacks that a jury might readily infer would affect decisions to terminate previously employed blacks as well as refrain from hiring new black employees. The statement was allegedly made by a senior officer of the company, and it was he who was responsible for the termination of Crawford's contract. A jury might readily infer that the expression of his prejudice against the hiring of blacks would infect his later decision to terminate an earlier employed black. Rizzo v. Means-Servs., Inc., 632 F. Supp. 1115, 1129 (N.D. Ill. 1986).
 
 
 19
 The immediate reference to Crawford and the expression of the opinion that he should not have been engaged may be facially neutral in racial terms, but the jury could consider it to have been affected by the expression of racial prejudice in the first statement. That it was a reference to the persistency problem is not demonstrable, for the persistency problem appears not to have been clearly recognized until 1981. Even if College Life's explanation of the statement may be viewed as plausible, an explanation based upon racial prejudice is also plausible. Under these circumstances, it is for a jury to decide what the statement meant. See Ross v. Communications Satellite Corp., 759 F.2d 355, 364 (4th Cir. 1985); Meschino, 563 F. Supp. at 1072-73.
 
 
 20
 Evidence of statements made by Buis almost three years before Crawford's termination might be regarded as of little relevancy when Crawford continued working for College Life until the entire FEIP program was abandoned. He claims, however, that he sought and was denied authorization to sell other kinds of insurance for College Life, an authorization that would have continued his employment relation. His allegation of racial prejudice in 1979 may well have a bearing upon the employer's reasons for denying Crawford permission to sell other forms of insurance when the FEIP program was discontinued.
 
 V.
 
 21
 We are in substantial agreement with the district court that the plaintiff has failed to show any compensable injury. It is undisputed that, within days after his termination, Crawford joined another insurance company where he has made more money than he did with College Life.
 
 
 22
 There is an unspecified and unsupported claim that he lost some $32,500 in commissions and benefits. There may be no award of damages, however, unless there is competent evidence to support it. Gertz v. Robert Welch, Inc., 418 U.S. 323, 350 (1974). Such an award may not be grounded upon unsupported assertions.
 
 
 23
 Crawford claims to have suffered some emotional distress, but the claim is supported only by his statements that he felt a sense of humiliation and embarrassment because he had been discharged because of his race. He makes no claim that he suffered any physiological or psychological problems as a result of the discharge.
 
 
 24
 He expressed some annoyance that when he placed several telephone calls to the company after his discharge they would not be accepted or he would be placed "on hold" and disconnected.
 
 
 25
 These claims are not enough to support an award for emotional distress and mental anguish. See Cohen v. Board of Educ., Smithtown Cent. School Dist., 728 F.2d 160, 162 (2d Cir. 1984); Nekolny v. Painter, 653 F.2d 1164, 1172-73 (7th Cir. 1981), cert. denied, 455 U.S. 1021 (1982). An award of actual damages for emotional distress may not be made on guess and speculation, but must have adequate competent evidence to support it. Carey v. Piphus, 435 U.S. 247, 264 n.20 (1978).
 
 
 26
 This, however, does not completely dispose of the case. If the plaintiff was wronged because of racial animus in the termination of his employment, he is entitled to recover nominal damages. See Carey, 435 U.S. at 254 n.20. if the plaintiff wishes to proceed in an effort to secure judicial vindication of his right and recovery of nominal damages, he may do so.
 
 
 27
 REVERSED AND REMANDED.
 
 K.K. HALL, Circuit Judge, dissenting:
 
 28
 I cannot accept the majority's conclusion that the Buis statements in 1979 would have a tendency to show racial discrimination in employment terminations. In my view one statement, three years earlier, standing alone is insufficient to indicate racial bias that would effect decisions to terminate blacks.
 
 
 29
 The Buis statement, even if it were made, would show nothing more than the mere possibility of discrimination that is insufficient as a matter of law. In order to overcome a motion for summary judgment, and therefore to have the case submitted to the jury, Crawford was required to demonstrate at least a reasonable probability that racial discrimination motivated his termination. Lovelace v. Sherwin-Williams Co., 681 F.2d 230 (4th Cir. 1982). This he has failed to do. I would therefore hold that Crawford has not made out a prima facie case of discrimination sufficient to overcome summary judgment in favor of College Life and affirm the decision of the district court.