**Jack CORCORAN, Plaintiff,**

v.

**GAB BUSINESS SERVICES, INC., Defendant.**

**No. 87 Civ. 4371(LBS).**

United States District Court, S.D. New York.

Sept. 13, 1989.

A. Lawrence Washburn, Jr., Albany, N.Y., Edgar Pauk, New York City, for plaintiff.

Joel L. Finger, Barry Asen, New York City, for defendant.

## OPINION

SAND, District Judge.

Plaintiff Jack Corcoran brought suit against defendant GAB Business Services alleging breach of contract and violations of 29 U.S.C. § 623, 29 U.S.C. § 1140, and the public policy of the State of New York. Plaintiff claims that GAB discharged him because of his age and in order to prevent him from receiving pension and disability benefits afforded GAB employees. This case is now before the Court on defendant's motion for summary judgment, pursuant to Fed.R.Civ.P. 56.

## BACKGROUND

Plaintiff was initially employed by GAB from August 29, 1960 to August 18, 1966. In August 1966, Plaintiff was asked to resign by his supervisor, who was dissatisfied with his job performance. In 1979 plaintiff was invited by a long-time acquaintance to interview for a supervisory position in GAB's Contract Administration Center, and was rehired on January 14, 1980 without a written contract. Plaintiff worked as a claims supervisor under various superiors until some time in February 1984.

In February 1984, plaintiff's superior at that time recommended to the Senior Vice President of the Claims Management Division, Mr. Paul Dougherty, that plaintiff be terminated. Dougherty decided instead to give plaintiff another chance. At a meeting in February and in a subsequent memorandum, plaintiff was apprised of the criticisms of his job performance. Plaintiff contends that these criticisms were either unjustified, or exaggerated. After the meeting, plaintiff was reassigned to a position under Dougherty's supervision with considerably less responsibility.

Plaintiff's performance in his new position was criticized at least once. In addition, without advising Dougherty, plaintiff left work during the day for doctor's appointments on sixteen days and for a different reason on another occasion. From April 21, 1984 until May 5, 1984 plaintiff was hospitalized for a heart condition. Upon his return to work, plaintiff was repeatedly asked by Dougherty for documentation of his hospital stay, which plaintiff contends the hospital had not yet prepared. On May 19, 1984, plaintiff gave Dougherty a letter from his cardiologist confirming his hospital stay.

On Friday, June 1, 1984, Dougherty instructed plaintiff to go to the hospital to get the documentation and not to return to work until he had done so. Plaintiff alleges that he then told Dougherty that he was not feeling well and would take two weeks vacation. According to plaintiff, he also told Dougherty that after his vacation, he "would" or "might" go on disability leave.

After plaintiff did not report to work on Monday June 4, 1984, or communicate with Dougherty, Dougherty decided to termi-

nate plaintiff's employment. By mailgram dated June 4, 1984, Dougherty informed plaintiff of his decision. Plaintiff contends that his former attorney called GAB's Personnel Office on June 4 and advised that plaintiff would be applying for disability benefits. Also on June 4, plaintiff wrote a letter to Mr. Dougherty enclosing a copy of the hospital bill, which Dougherty received on June 5, 1984. Plaintiff received Dougherty's mailgram in the afternoon of June 5, 1984.

At the time of his termination, plaintiff was sixty-one years of age and seven months short of vesting in GAB's pension plan. Plaintiff commenced this action on or about May 27, 1989.

## DISCUSSION

Fed.R.Civ.P. 56(c) stipulates that a motion for summary judgment shall be granted if there is "no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Materiality of facts is determined by the applicable substantive law, and a genuine dispute exists over a material fact if a reasonable jury viewing the evidence could decide in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986). A party cannot survive a summary judgment motion just because the defendant's mental state is the "determinative issue." *Dister v. Continental Group, Inc.*, 859 F.2d 1108, 1114 (2d Cir. 1988).

## I. AGE DISCRIMINATION CLAIM

■ Plaintiff's motion papers make it apparent that he has all but abandoned his age discrimination claim. As a result, it will be considered here only briefly. The Age Discrimination in Employment Act, 29 U.S.C. § 623(a)(1) [hereinafter ADEA], provides that: "It shall be unlawful for an employer ... to discharge any individual or otherwise discriminate against any individ-

ual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." Plaintiff alleges that both his demotion in February 1984 and his termination on June 4, 1984 violated this provision. In so far as plaintiff's claim relates to his demotion, it is barred by the applicable statute of limitations.[1]

Under the ADEA, an "essential element" of the plaintiff's case is proof that the individual representative of the employer who made the decision to terminate was "at least in part motivated by the specific intent to engage in activity prohibited by [ADEA]." *Dister*, 859 F.2d at 1111. In *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–05, 93 S.Ct. 1817, 1824–26, 36 L.Ed.2d 668 (1973), the Supreme Court outlined a three-step analysis for proving the intent element in discrimination cases such as this. First, the plaintiff must prove a prima facie case of discrimination. If the plaintiff can do so, the burden shifts to the defendant to "articulate some legitimate, nondiscriminatory reason for the employee's rejection." *Id.* 411 U.S. at 802, 93 S.Ct. at 1824. Finally, the plaintiff must demonstrate by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination.

■ In order to establish a prima facie case, plaintiff must show that he "(1) belongs to a protected group, (2) was qualified for the position, and (3) was discharged or denied employment under circumstances that give rise to an inference of discrimination." *Dister*, 859 F.2d at 1114–15. Plaintiff fails to meet even the *"de minimus"* burden of establishing circumstances which give rise to an inference of age discrimination. *Id.* at 1114. Other than two isolated comments about his age by individuals who plaintiff admits had nothing to do with the decision to terminate him, plaintiff offers nothing more than the single fact that he

---

1. The three year statute of limitations for intentional violations of ADEA starts to run when the decision to demote was unequivocally made by management. See 29 U.S.C. § 626(e)(1); *Verschuuren v. Equitable Life Assurance Soc'y*, 554

F.Supp. 1188, 1190 (S.D.N.Y.1983). Plaintiff's demotion occurred in February 1984 and his lawsuit was commenced on or about May 27, 1987.

was terminated at the age of sixty-one as evidence of any age discrimination.[2]

Neither the comments nor plaintiff's age alone is sufficient to establish an inference of discrimination. *See Mantione v. Ted Bates*, 38 FEP Cases 1457, 1462–63, 1985 WL 2516 (S.D.N.Y.1985) (comment relating to age by someone other than decision-maker cannot help plaintiff to overcome summary judgment motion); *Dister*, 859 F.2d at 1111 (plaintiff is required to prove more than the fact of his termination and its consequences); *see also Littman v. Firestone Tire & Rubber Co.*, 709 F.Supp. 461, 465 (S.D.N.Y.1989) (inference of discrimination may be shown by fact that younger employee replaced plaintiff, by direct evidence, or circumstantial evidence such as documentation of satisfactory performance, but conclusory statements of discrimination do not meet the burden).

The motion for summary judgment insofar as it is addressed to the age discrimination claim is granted.

## II. PENSION DISCRIMINATION CLAIM

Plaintiff asserts that GAB violated the Employee Retirement Income Security Act, 29 U.S.C. § 1140 [hereinafter ERISA], by terminating him for the purpose of depriving him of his pension rights. § 1140 provides: "It shall be unlawful for any person to discharge ... a participant or beneficiary [in an employee benefit plan] ... for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan ..." The Second Circuit has indicated that claims under ERISA should be considered under the same analysis as ADEA claims. *Dister*, 859 F.2d at 1112.

Viewing all the facts in plaintiff's favor, it is arguable that plaintiff can establish a prima facie case of pension discrimination under the *Dister* standards. Plaintiff was clearly in a protected class, and if his deposition testimony is to be believed, his job performance could conceivably have met the most minimum "legitimate expectations" of his employer. *See Meiri v. Dacon*, 759 F.2d 989, 995 (2d Cir.), *cert. denied*, 474 U.S. 829, 106 S.Ct. 91, 88 L.Ed.2d 74 (1985). In *Dister*, the Court found that plaintiff's discharge four months and seven days before certain pension rights were to vest and the substantial cost savings to the defendant employer were enough to create an inference of discrimination. 859 F.2d at 1115. Here, the fact that the plaintiff was seven months short of vesting in GAB's pension plan, when combined with the inevitable cost savings to GAB, seems to meet *Dister's* requirements for an inference of discrimination.

Proceeding to the next step in the *McDonnell Douglas* analysis, the defendant must "articulate some legitimate, nondiscriminatory reason for the employee's [termination]." 411 U.S. at 802, 93 S.Ct. at 1824. GAB offers a number of legitimate reasons for plaintiff's termination, including inadequate job performance, spotty attendance, and the failure to provide proper documentation of his hospital stay when requested to do so. Plaintiff was warned at least once that his performance was inadequate, demoted three months before his termination but given one more chance at Dougherty's urging, and criticized one more time for poor performance in his new position. During the three and one-half months after he was demoted, plaintiff left work on seventeen occasions without Dougherty's approval. Finally, on Friday June 1, 1984 plaintiff was told not to return to work without documentation from New York Hospital indicating that he had been hospitalized a few weeks earlier. After obtaining partial documentation, plaintiff decided that his physical condition would not permit him to return to work the following Monday, but inexplicably neglected to inform Dougherty of his plans. It was at this juncture that Dougherty decided to terminate plaintiff.

---

**2.** Plaintiff does assert in his complaint that he was replaced by a considerably younger employee at the time of his demotion in February 1984. However, this evidence is relevant only to the portion of his claim relating to his demotion, which is time barred, not to the claim relating to his termination.

■ Step three of the *McDonnell Douglas* analysis requires the plaintiff to "prove by a preponderance of the evidence" that the "stated reason for [his termination] was in fact a pretext" for unlawful discrimination. *Dister*, 859 F.2d at 1115; *McDonnell Douglas*, 411 U.S. at 804, 93 S.Ct. at 1825. The only fact which plaintiff offers to support his claim of pension discrimination is a statement by an employee whom the plaintiff refuses to identify to the effect that inquiry into the company's pension benefits policies "put[s] up a red flag." Corcoran deposition at 552–56 [hereinafter Corcoran]. Plaintiff offers no evidence as to the accuracy or credibility of this out-of-court assertion or even as to its precise meaning. Plaintiff himself admits that he has no evidence that GAB was concerned with the cost of its pension program or that any other employee was terminated a short time before his or her pension was to vest. Corcoran at 570–71; 557. Finally, plaintiff acknowledges that he has no indication that Dougherty, the decision-maker, even knew when plaintiff's pension rights would vest. Corcoran at 324, 561. In sum, plaintiff falls far short of showing that defendant could have been motivated by any specific intent to deprive him of his pension benefits.

■ As if sensing the weakness of his position, plaintiff invites the Court to impose an "implied statutory duty" on managers like Dougherty to inquire into an employee's ERISA status before termination. The Court declines plaintiff's invitation. At oral argument, plaintiff's counsel conceded that he could find no precedent supporting his position. Transcript of oral argument at 12 [hereinafter Tr]. We believe that plaintiff's suggestion would be counterproductive to the goal of having employment decisions made independently on their merits and without conscious regard to their pension consequences. Requiring inquiry and consideration of the pension benefit impact of a termination would render an employer more vulnerable to a claim of violation of § 1140 in instances in which the termination decision would otherwise be made solely on the question of the employee's job performance. Such a result would directly contravene the Second Circuit's pronouncement that an ERISA cause of action will not lie where "the loss of pension benefits was a mere consequence of, but not a motivating factor behind, a termination of employment." *Dister*, 859 F.2d at 1111.

The motion for summary judgment is granted as to the § 1140 claim.

## III. DISABILITY DISCRIMINATION CLAIM

■ Plaintiff's amended complaint asserts no claim based on disability discrimination. Nevertheless, his primary theory of recovery in his motion papers and at oral argument is that his termination violated ERISA because it was for the purpose of preventing him from receiving the disability benefits guaranteed employees of GAB. For plaintiff to recover on such a theory, he would need to be granted leave of court to amend his complaint, for despite plaintiff's contrary contention, it is clear that no such claim appears in the present complaint. Fed.R.Civ.P. 15. Such leave is to be given "when justice so requires," *id.*, but need not be given when the amendment would be futile. *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962). If plaintiff's claim could not survive a summary judgment motion, an amendment to the complaint to include such a claim would be futile. Since the parties' motion papers adequately describe the relevant facts, a discussion of the merits is in order.

■ Once again, to meet the requirements of the *McDonnell Douglas* test, plaintiff must establish that one of GAB's purposes in terminating him was to interfere with his receipt of disability benefits. *Dister*, 859 F.2d at 1111. Plaintiff points to several disputed and undisputed facts which he claims could lead a reasonable juror to find that plaintiff's termination was for such a purpose. These facts will be considered in turn.

First, plaintiff contends that he informed Dougherty on June 1, 1984 that he planned to go on disability leave. While Dougherty

alleges that no discussion of disability ever occurred, plaintiff describes two different versions of this discussion, both of which include a reference to disability. Once in his deposition and again in his post argument memorandum, plaintiff indicates that he told Dougherty on June 1 that he *might* take disability but would try to return to work after a two week vacation. Corcoran at 110; plaintiff's post argument memorandum at 3. However, he asserts in numerous other instances that he told Dougherty he *would* go on disability after his vacation. Furthermore, plaintiff admits that during this discussion he did not refer specifically to the term of disability he had in mind, but told Dougherty only that he would (or might) submit disability papers. Corcoran at 811.

Taking plaintiff's allegations as a whole, it would be difficult to charge Dougherty with anything more than the knowledge that plaintiff was considering applying for some form of disability benefits. Furthermore, even if plaintiff could establish that Dougherty knew that plaintiff definitely planned to apply for long term disability benefits, he would still be required to offer some evidence that this knowledge somehow influenced Dougherty's decision to terminate him. The record is completely devoid of such evidence. Plaintiff proposes no explanation why Dougherty would save plaintiff's job in February only to fire him in June to prevent him from receiving disability payments.

Plaintiff argues that once he announced his intention to go on disability leave on June 1, there could be no valid business reason for firing him. The sharp line plaintiff seeks to draw is not appropriate in this case. By the time plaintiff raised the issue of disability in the June 1 meeting, Dougherty had already outlined the conditions for plaintiff's continued employment. Plaintiff admits that when he was demoted in February, he was told if he did not "do well" in his new position he would be fired. Corcoran at 354. He also concedes that he was criticized "at least once" for his work in his new position. Id. at 404. Finally, plaintiff admits that Dougherty's warning on June 1 for plaintiff to "go right now" to get the hospital bill and "not to return without it" was delivered in a "harsh, aggressive and rude tone." Corcoran affidavit at 6. At the very least, plaintiff should have been aware that his job depended upon his willingness to follow these instructions. Before Dougherty could have learned of plaintiff's intention to apply for disability, he had established a sufficient basis for sanctioning the plaintiff. Under these circumstances, whether or not Dougherty knew the plaintiff would file for disability when he actually made the decision to terminate him can hardly be viewed as decisive.

Plaintiff also attributes a great deal of importance to Dougherty's consultation with GAB's Personnel Department on June 4, 1984, the same day he dispatched the telegram formally terminating plaintiff. Plaintiff contends that his attorney at the time, Mr. Walsh, had telephoned the Personnel Department earlier in the day and advised them that plaintiff would be seeking disability benefits.[3] Plaintiff draws the conclusion that Dougherty decided to terminate plaintiff only after learning from the Personnel Department that plaintiff planned to submit disability papers. Once again, all this evidence could establish is that Dougherty might have been aware of plaintiff's intentions, not that they were a consideration in his decision.

Plaintiff points to an August 23, 1984 letter he received from the GAB Personnel Department as evidence of a policy on the part of GAB to terminate employees to prevent them from receiving benefits. The letter, written in response to plaintiff's inquiry about the availability of various benefits, merely explained that "eligibility terminate[d] upon termination of employment." This statement can be read to mean only that a terminated employee would not receive benefits, not that employment would be terminated for the purpose of not paying benefits.

---

**3.** The only evidence plaintiff offers to establish that such a call was placed is his own hearsay account of the conversation. Corcoran Affidavit at 7.

Finally, plaintiff offers evidence which he claims establishes that he was de facto disabled during the early part of 1984. This evidence includes a letter from his doctor, sworn testimony as to his physical condition during this period, and an April 30, 1986 Social Security Administration decision finding retroactively that plaintiff was disabled on June 1, 1984. Even if one were to accept plaintiff's contentions that he was disabled on June 1 and that Dougherty knew of plaintiff's condition, plaintiff has still not established a valid basis for recovery under ERISA. At most plaintiff has proved that he was fired because he was disabled and could not do his job, not that he was fired to avoid paying him disability benefits.

■ At least some of Dougherty's reasons for terminating plaintiff no doubt related to plaintiff's physical condition. Indeed, plaintiff's unexplained absences and frequent lateness, and perhaps even the quality of his work, could well have been the result of his health problems. The obvious lack of communication between plaintiff and Dougherty no doubt compounded the problem. However, terminating an employee solely because of his or her physical disabilities is not a violation of ERISA. Plaintiff's evidence regarding his physical condition is simply not sufficient to support his ERISA claim.

The contrast between the evidence in *Zipf v. AT & T*, 799 F.2d 889 (3d Cir.1986), and the evidence here is instructive. In *Zipf* the court refused to grant a summary judgment motion brought by an employer against a discharged employee who had been terminated because of excessive absenteeism immediately before she would have become eligible for disability payments. Unlike this case, the plaintiff in *Zipf* presented statements by her immediate supervisor to the effect that she "was being fired to prevent her from becoming eligible for disability benefits." *Id.* at 894. Although this supervisor did not actually make the decision to terminate the plaintiff, he was "the company's agent designated to deal with Zipf regarding her termination" and was "intimately involved" in and familiar with the actual decision. *Id.* at 895. While this case resembles *Zipf* in the sense that Zipf was disabled and the consequences of her disability were the pretext for her termination, the critical element is missing here. In this case, plaintiff has offered no statement by Dougherty, the decisionmaker, or anybody else connected with the decision suggesting that the prospect of paying disability benefits influenced the decision in any way.

Although plaintiff has not sought leave to amend the complaint to assert a claim based on alleged deprivation of disability benefits, we have sua sponte considered the appropriateness of such relief because we are fully satisfied that no such claim is advanced in the complaint presently before the court. Mindful of the leniency with which such leave is granted, we are nevertheless of the opinion that no worthwhile purpose would be served by a further protraction of this litigation.

## IV. PENDANT STATE LAW CLAIMS

Having dismissed plaintiff's federal claims, the Court finds no reason to exercise its discretion to continue plaintiff's pendant state claims in this Court. The state claims are therefore dismissed without prejudice.

## CONCLUSION

For the reasons stated above, the defendant's motion for summary judgment is granted and plaintiff's federal claims are dismissed with prejudice. Plaintiff's state claims are dismissed without prejudice.

SO ORDERED