**Robert STECK, Plaintiff,**

v.

**SMITH BARNEY, HARRIS UPHAM & CO., INCORPORATED, Defendant.**

Civ. A. No. 86–4207.

United States District Court,
D. New Jersey.

June 4, 1987.

Kevin Kiernan, Smith, Mullin & Kiernan, P.C., West Orange, N.J., for plaintiff.

Brian F. McDonough, Shanley & Fisher, P.C., Morristown, N.J., for defendant.

OPINION

SAROKIN, District Judge.

Defendant moves before this court pursuant to the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.*, seeking to compel arbitration of plaintiff's ADEA and related state claims. For the reasons set forth below, the court denies the defendant's motion to require arbitration of the federal ADEA claim. As to the state law claims, the court is compelled to grant defendant's motion.

BACKGROUND

Plaintiff, Robert Steck, was hired by the defendant, Smith, Barney, Harris Upham & Co., in November 1973 as an account executive. As a condition of employment, plaintiff executed an application and agreement for approval as a registered representative pursuant to the rules of the New York Stock Exchange ("NYSE"). *See* Application for Securities Industry Registration,

---

Exhibit A attached to Clark Affidavit. The standardized agreement provides as follows:

"I agree that any controversy between me and any member or member organization or affiliate or subsidiary thereof arising out of my employment or the termination of my employment shall be settled by arbitration at the instance of any such party in accordance with the arbitration procedure prescribed in the Constitution and rules then obtaining of the New York Stock Exchange, Inc.".

In addition, Rule 347 of the New York Stock Exchange mandates that any controversy between a registered representative and any member "arising out of employment or termination of employment of such registered representative by and with such member" shall be settled by arbitration at the instance of any such party. Defendant contends that in registering with the NYSE, plaintiff agreed to and became bound by its rules.

On or about September 29, 1984, plaintiff was terminated by the defendant. Alleging that the termination constituted unlawful discrimination on the basis of age, plaintiff instituted the underlying suit. The complaint alleges violations of the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621 *et seq.*, the New Jersey Law Against Discrimination, N.J.S.A. § 10:5 *et seq.*, as well as the public policy of the State of New Jersey.

Defendant now moves before the court pursuant to the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.* to require arbitration of plaintiff's ADEA and related state claims. Section 2 of the Arbitration Act, 9 U.S.C. § 2, provides:

A written provision in any ... contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction ... shall be valid, irrevocable and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

Defendant asserts that neither the text nor legislative history of the ADEA reflect any Congressional intent to exempt ADEA

claims from the Arbitration Act's requirements. In addition, relying on the Supreme Court's holding in *Dean Witter Reynolds, Inc. v. Byrd,* 470 U.S. 213, 105 S.Ct. 1238, 84 L.Ed.2d 158 (1985), defendant contends that Smith Barney's federally protected right to arbitration overrides any contrary right by the plaintiff to bring his pendent state claims in this forum.

DISCUSSION

I. *Plaintiff's ADEA Claim*

█ In determining the arbitrability of plaintiff's ADEA claims the court relies on the analytic framework set forth in *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth,* 473 U.S. 614, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985). The *Mitsubishi* Court required a two step inquiry: (1) "whether the parties' agreement to arbitrate reached the statutory issues" and (2) "whether legal constraints external to the parties' agreement foreclosed the arbitration of those claims." *Id.* at 3355.

The *Mitsubishi* Court refused to read a presumption against arbitration of statutory claims into the Federal Arbitration Act. *Id.* at 3353. Emphasizing the significant federal interest favoring rigorous enforcement of arbitration agreements, *Moses H Cone Memorial Hospital v. Mercury Construction Corp.,* 460 U.S. 1, 24, 103 S.Ct. 927, 941, 74 L.Ed.2d 675 (1983) ("questions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration"), the Court held that a party who has agreed to arbitrate must do so "unless Congress itself has evinced an intention to preclude a waiver of judicial remedies for the statutory rights at issue." *Mitsubishi,* 105 S.Ct. at 3355. Adopting *Mitsubishi's* reasoning, the Third Circuit has held that determining arbitrability of federal statutory claims is a "matter of statutory interpretation" and may not be determined "on the basis of some judicially recognized public policy". *Jacobson v. Merrill Lynch, Pierce, Fenner & Smith,* 797 F.2d 1197, 1202 (3d Cir 1986). Thus, a statutory claim is "arbitrable"-that is, capable of being subjected to arbitration by the parties' prior agreement-unless there is a congressional intention, "deduc-

ible from text or legislative history'" to the contrary. *Mitsubishi*, 105 S.Ct. at 3355.

## A. *Scope of the Arbitration Provision*

Following the dictates of *Mitsubishi*, the court must first determine whether plaintiff's ADEA claim falls within the arbitration provisions of the standardized NYSE agreement applicable to registered representatives.

The agreement executed by plaintiff explicitly requires arbitration of any controversy "arising out of" the "termination of employment". *See* Exhibit A attached to Clark Affidavit. The broad language draws no distinction between the arbitrability of claims challenging termination on statutory or contractual grounds. Moreover, the Third Circuit, examining a substantially identical NYSE application form, broadly construed the agreement "to mean what the language says, i.e., that '*all* disputes' arising out of the termination of a registered representative are subject to arbitration". *See e.g., Barrowclough v. Kidder, Peabody & Co. Inc.*, 752 F.2d 923, 938 (3d Cir.1985).

Plaintiff contends that his ADEA claim is outside the scope of the agreement because the parties never "bargained" with respect to the arbitration clause; and further, because the agreement is nothing more than a boilerplate NYSE application which all applicants must sign in order to qualify as registered representatives. However, the Third Circuit expressly rejected this same argument in *Barrowclough, supra.* Holding that such application forms constitute binding arbitration agreements between registered representatives and their sponsoring employers, the court found that "[t]he arbitration clause is not invalid ... merely because it is required of all registered brokers by New York Stock Exchange Rule 347". *Id.* at 937.

For the reasons set forth above, the court concludes that the ADEA claim falls within the arbitration provision at issue.

## B. *Congressional Intent*

Plaintiff's federal claim is based upon Section 4 of the ADEA, 29 U.S.C. § 623, which provides:

It shall be unlawful for an employer ... to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age.

In enacting the ADEA, congress sought to "promote employment of older persons based on their ability rather than age" and "to prohibit arbitrary age discrimination in employment". *See* 29 U.S.C. § 621(b). The ADEA's remedial and procedural provisions exist in order to completely secure the rights and expectations brought into being by this landmark legislation. H.Rep. No. 805, 90 Cong., 1st Sess., reprinted in 1967 U.S.Code Cong & Admin.News 2213, 2218.

In ascertaining Congressional intent concerning the arbitrability of ADEA claims, this court recognizes the "important similarities" between the ADEA and Title VII of the Civil Rights Act, 42 U.S.C. § 2000e *et seq.* The Supreme Court has noted such similarities "both in their aims—the elimination of discrimination from the workplace—and in their substantive prohibitions. In fact, the prohibitions of the ADEA were derived in *haec verba* from Title VII". *Lorillard v. Pons*, 434 U.S. 575, 584, 98 S.Ct. 866, 872, 55 L.Ed.2d 40 (1978). In addition, the *Lorillard* Court noted that in looking "to the procedural provisions of the [ADEA], we find a significant indication of Congress' intent in its directive that the ADEA be enforced in accordance with the 'powers, remedies, and procedures'" of the Fair Labor Standards Act of 1938 (FLSA), 29 U.S.C. § 201 *et seq. Id.* at 580, 98 S.Ct. at 870.

Though the Supreme Court has not addressed the arbitrability of the ADEA under the Federal Arbitration Act, the Court's precedent pertaining to these analogous statutory schemes supports the conclusion that suits alleging violation of substantive rights conferred by ADEA can be brought in federal court notwithstanding an agreement to arbitrate. In *Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974), a unani-

mous Court determined that an employee's Title VII rights to be free of discrimination, "are not susceptible of prospective waiver". *Id.* at 51–52, 94 S.Ct. at 1021–22. Though *Alexander* involved an attempt to preclude subsequent judicial consideration of a Title VII race discrimination claim previously grieved, rather than an effort to compel arbitration, this court finds *Alexander*'s analysis informative. The Supreme Court reasoned that "[t]he purpose and procedures of Title VII indicate that Congress intended federal courts to exercise final responsibility for enforcement of Title VII; deferral to arbitral decisions would be inconsistent with that goal." *Id.* at 56, 94 S.Ct. at 1023.

Similarly, in *Barrentine v. Arkansas-Best Freight System,* 450 U.S. 728, 101 S.Ct. 1437, 67 L.Ed.2d 641 (1981) the Supreme Court ruled that a claim under the Fair Labor Standards Act of 1938 should not be deferred to arbitration. Specifically, the Court held that "[t]he statutory enforcement scheme [of the FLSA] grants individual employees broad access to the courts". *Id.* at 740, 101 S.Ct. at 1441. Concluding that "FLSA rights cannot be abridged by contract or otherwise waived because this would 'nullify the purposes' of the statute and thwart the legislative policies it was designed to effectutate", *Id.,* the Court interpreted Congressional intent to preclude waiver of judicial remedies. See also *McDonald v. City of West Branch,* 466 U.S. 284, 104 S.Ct. 1799, 80 L.Ed.2d 302 (1984) (civil rights claims under Section § 1983 are not appropriate for arbitration). Reading *Barrentine* in conjunction with the Supreme Court's holding in *Lorrillard, supra,* requiring that the ADEA be enforced in accordance with the procedures and remedies of the FLSA, this court deduces an implicit non-waiver intent from the ADEA's text and legislative history. *See Horne v. New England Patriots Football Club,* 489 F.Supp. 465, 470 (D.Mass.1980) (any employee may not prospectively waive any statutory claim he may have with respect to ADEA claims).

Defendant relies on Judge Adams's separate opinion in *Jacobson v. Merrill Lynch, Pierce, Fenner & Smith,* 797 F.2d 1197 (3d Cir.1986), for the proposition that *Mitsubishi* "would appear to limit the effect of *Barrentine* and *Gardner-Denver*". *Id.* at 1207. The court rejects this argument in light of the Third Circuit's more recent holding in *Gavalik v. Continental Can Co.,* 812 F.2d 834 (3d Cir.1987), which emphasized that so long as a judicial determination of arbitrability results from an independent interpretation of the Congressional intent, it will not be understood to contravene *Mitsubishi. Id.* at 850, n. 30.

In finding that Congress intended the judicial access guaranteed by Title VII and FLSA to be inviolate, thereby rendering these claims non-arbitrable under *Mitsubishi,* the Supreme Court relied on various statutory indicators also present in the text and legislative history of the ADEA. For example, the Court pointed to the legislative mandate granting courts plenary enforcement power over Title VII as an indication of Congressional intent to exempt Title VII claims from the Arbitration Act. *Gardner-Denver Co.,* 415 U.S. at 44, 94 S.Ct. at 1017. The Supreme Court reasoned that in granting courts broad authority to order "such [remedial] affirmative action as may be appropriate" Congress clearly intended Title VII rights to be exclusively judicially enforceable. *Barrentine,* 450 U.S. at 740–746, 101 S.Ct. at 1444–48.

These same indicators may be located in the text of the ADEA. 29 U.S.C. § 626(b) endows the court with jurisdiction to grant "such legal or equitable relief as may be appropriate"—including, but not limited to injunctive relief—to effectuate the ADEA's purposes; relief not within an arbitrator's authority. As noted in *Gardner-Denver* and *Barrentine,* an arbitrator "has no general authority to invoke public laws that conflict with the bargain of the parties". Therefore, if required to arbitrate his ADEA claims, plaintiff risks having his statutory rights subordinated to the terms of the contract in contravention of the ADEA's purpose. In the alternative, if the arbitrator bases his decision upon the substantive guarantees of the ADEA exclusively, the arbitrator has exceeded the scope of his authority, which may render his decision null and void. Under either

scenario, compelling arbitration fails to vindicate the rights guaranteed by the ADEA in contravention of Congressional intent.

Though the question of ADEA arbitrability is one of first impression, the Third Circuit has engaged in the substantially identical analysis with respect to the anitdiscrimination provision embodied in Section 510 of ERISA.[1] In *Zipf v. American Telephone and Telegraph*, 799 F.2d 889 (3d Cir.1986), the Third Circuit held Section 510 of ERISA to be non-arbitrable, explaining that "the legislative history suggests that the remedy for Section 510 discrimination was intended to be provided by the courts". *Id.* at 892. As outlined above, the same is true of the ADEA.

In addition, *Zipf* identified a Congressional interest in judicial resolution of discrimination claims under ERISA, "for the purpose of providing a consistent source of law to help plan fiduciaries and participants predict the legality of proposed actions". *Id.* at 893. Here again, this same consideration applies to plaintiff's ADEA claim. In enacting the ADEA, Congress was responding to a pervasive nationwide phenomenon of discrimination against older workers. The realization of Congress' intent—to promote employment of older persons based on their ability rather than age and to effectively prohibit arbitrary age discrimination in employment—requires the development of a consistent body of judicial precedent to guide employer actions.

The Third Circuit has had a chance to review its ruling in *Zipf* subsequent to the Supreme Court's decision in *Mitsubishi*. *Gavalik v. Continental Can Co.*, 812 F.2d 834 (3d Cir.1987). In *Gavalik* the Third Circuit affirmatively held that the analysis in *Zipf* did not contravene *Mitsubishi*'s mandate. The court held that *Zipf* "did not resort to a presumption of unarbitrability, but rather sought to ascertain Congressional intent on the question of arbitrability". *Id.* at 850.

This court, relying on the guidance of *Gavalik*, has examined the ADEA's legislative history, as well as that of the civil rights statutes upon which it was closely modeled, and has discerned a Congressional intent to preclude waiver of judicial remedies under the ADEA. Mindful of *Mitsubishi*'s mandate, this court nevertheless concludes for many of the same reasons offered in *Barrentine*, *Gardner-Denver* and *Zipf*, that plaintiff's ADEA claims are non-arbitrable.

## II. *Plaintiff's State Law Claims*

■ Relying on the Supreme Court's recent pronouncement in *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 105 S.Ct. 1238, 84 L.Ed.2d 158 (1985), defendant argues that plaintiff's state law claims for violations of the New Jersey Law Against Discrimination and New Jersey public policy must be submitted to arbitration. The court, though reluctant, is compelled to agree.

In *Dean Witter Reynolds Inc. v. Byrd*, the Supreme Court held that the Arbitration Act "requires district courts to compel arbitration of pendent arbitrable claims when one of the parties files a motion to compel *even where the result would be the possibly inefficient maintenance of seprate proceedings in different forums*" (emphasis added). *Id.* at 1241. The court reasoned that in enacting the Arbitration Act, Congress created a body of substantive federal law and withdrew the power of the states to require a judicial forum for the resolution of claims which contracting parties agreed to resolve by arbitration. *Southland Corp. v. Keating*, 465 U.S. 1, 104 S.Ct. 852, 858, 79 L.Ed.2d 1 (1984). Thus, even where the relevant state law at issue expressly precludes waiver of the judicial forum, if the parties have nevertheless executed a binding arbitration agreement, the Supremacy Clause requires that the Arbitration Act supercede the state law non-waiver provision, and that arbitration be compelled. *Id.*

Accordingly, confronted with the question of whether to compel arbitration of

---

1. Section 510 of ERISA provides: "[It is unlawful] for any person to discharge ... or discriminate against a participant or beneficiary ... for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan, this subchapter, or the Welfare and Pension Plans Disclosure Act ... 29 U.S.C. § 1140".

state law claims when the federal court will in any event assert jurisdiction over non-arbitrable federal claims, the Supreme Court determined that arbitration of the pendent claims was required as a matter of federal law. "[T]he relevant federal law requires piecemeal resolution when necessary to give effect to an arbitration agreement". *Dean Witter, supra,* 105 S.Ct. at 1242. This is true even where the substantive provisions of the state law are so legally and factually "intertwined" with the federal non-arbitrable claims that judicial economy would dictate that the claims be tried together in federal court. The court expressly denied that efficiency had any relevance in light of the Arbitration Act's mandate. *Id.* In essence the court concluded that the Arbitration Act, by its terms, "leaves no place for the exercise of discretion by a district court, but instead mandates that the district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed". *Id.* at 1241.

Though plaintiff's claims under the New Jersey Law Against Discrimination mirror the claims under the ADEA, and though the claims are legally and factually interdependent, *Dean Witter* divests this court of all discretion to waive arbitration and try the pendent claims with plaintiff's ADEA action. Plaintiff forcefully argues that the state of New Jersey has modeled its statute upon Title VII and that the state court would read the Law Against Discrimination as precluding arbitration. *See Thornton v. Potamkin Chevrolet,* 462 A.2d 133, 94 N.J. 1 (1983); *Hahn v. Arbat Systems Ltd.,* 200 N.J.Super. 266 (App.Div.1985). Nevertheless, the Supreme Court has made clear that the Arbitration Act compels arbitation unless there is a countervailing Congresional interest expressed in another federal statute. Where as here, the statute in question is a state statute, such that no Congressional intent is involved, the Arbitration Act must be strictly enforced. *See Williams v. Smith Barney,* No. L–025739–84 (Law Div. Bergen Cty.) (court ordered arbitration of a registered representative's sex discrimination claims brought under the Law Against Discrimination).

The court therefore grants defendant's motion to compel arbitration of the state law claims. However, the court notes that the Supreme Court has left open the question of whether any fact finding by the arbitrator with regard to the pendent claims can bind this court's fact finding with respect to the ADEA challenge. *Dean Witter,* 105 S.Ct. at 1244. Without ruling, this court states its inclination to reject any argument that the determinations of the arbitrator on common issues of fact will have a collateral estoppel effect on this court's adjudication of plaintiff's ADEA claims. The issue is as yet unripe, and the court will reserve judgment until, and if, the collateral estoppel question is raised subsequent to the grievance proceeding.

The court also urges the parties to discuss means to avoid duplicative proceedings and the costs in time and money incident thereto, particularly since the arbitration proceeding is unlikely to have any preclusive effect upon the federal action.

CONCLUSION

Defendant's motion to compel arbitration of plaintiff's ADEA claim is hereby denied. The court reluctantly grants defendant's motion to compel arbitration of the pendent state claims.