Elizabeth GARFIELD, Plaintiff,

v.

THOMSON McKINNON SECURITIES,
INC., Defendant.

No. 88 C 3027.

United States District Court,
N.D. Illinois, E.D.

Dec. 19, 1988.

Marty J. Schwartz, Wilin & Rosen, Ltd., Chicago, Ill., for plaintiff.

Michael T. Hannafan and James M. Byrnes, Michael T. Hannafan & Associates, Inc., Chicago, Ill., for defendant.

## MEMORANDUM OPINION AND ORDER

PLUNKETT, District Judge.

Plaintiff Elizabeth Garfield ("Garfield") has brought this action against defendant Thomson McKinnon Securities, Inc. ("Thomson McKinnon") under the Age Discrimination in Employment Act, 29 U.S.C. § 621, *et seq.* ("ADEA"), along with a pendent claim for breach of an oral employment agreement by the defendant.

Plaintiff was employed by defendant as a registered representative with various stock and commodities exchanges, including the New York Stock Exchange ("NYSE"). Plaintiff, upon commencing her employment for defendant in 1977, executed a Uniform Application for Securities and Commodities Representative and/or Agent ("Uniform Application"), and a New York Stock Exchange Agreement, form AD–G–I ("NYSE Agreement"). These documents provide that plaintiff agrees to settle by arbitration any controversy arising out of her employment by defendant.

Defendant has moved to dismiss plaintiff's complaint and compel arbitration according to the provisions of these agreements. Both parties agree that plaintiff's pendent contract claim is subject to the arbitration agreement. That claim is therefore dismissed, with instructions to submit it to arbitration pursuant to the rules of the NYSE. The only issue before this court is whether plaintiff's claim of age discrimination under the ADEA may proceed before this court or must be arbitrated.

Defendant claims that plaintiff, by signing the two agreements, agreed to arbitrate *all* controversies arising out of her employment, including discrimination

claims. Plaintiff responds that ADEA claims are not arbitrable by prior agreement, and that Congress did not intend to permit waiver of her right to bring an ADEA lawsuit in federal court by virtue of an agreement executed prior to the time her claim arose.

### A. *Legal Framework*

In determining the arbitrability of plaintiff's ADEA claim, the court notes that " 'any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration.' " *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.*, 473 U.S. 614, 626, 105 S.Ct. 3346, 3353, 87 L.Ed.2d 444 (1985); quoting *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*, 460 U.S. 1, 24–25, 103 S.Ct. 927, 941, 74 L.Ed.2d 765 (1983). In *Mitsubishi*, the Supreme Court held that arbitration clauses apply to claims founded upon federal statutory rights designed to protect particular classes. 473 U.S. at 625, 105 S.Ct. at 3353. This court relies on the analytic framework set forth in *Mitsubishi* for determining whether a particular claim is subject to an arbitration clause: first, the court must decide whether the parties' agreement to arbitrate reached the statutory issue; and then, upon finding it did, we must consider whether legal constraints external to the parties' agreement foreclosed the arbitration of those claims. 473 U.S. at 628, 105 S.Ct. at 3354. The Supreme Court held in *Mitsubishi* that a party who has agreed to arbitrate must do so unless Congress evinced an intention to preclude a waiver of judicial remedies for the statutory rights at issue. 473 U.S. at 628, 105 S.Ct. at 3354.

### B. *Scope of the Arbitration Provision*

■ The court must first determine whether plaintiff's ADEA claim falls within the arbitration provisions of the Uniform Application and the NYSE Agreement. The Uniform Application provides, "further, and in consideration of the securities or commodities self-regulatory organization receiving and considering the application, I submit myself to the jurisdiction of such organization(s)." "I agree to abide by the ... rules ... of the agency ... to which I am ... submitting this application."

The NYSE Agreement provides: "(j) I agree that any controversy between me and any member or member organization or affiliate or subsidiary thereof *arising out of my employment or the termination of my employment* shall be settled by arbitration ..." (emphasis added). This broad language draws no distinction between the arbitrability of claims based on statutory or contractual grounds. The agreement covers "any controversy" and hence appears to cover all disputes. *See Steck v. Smith Barney, Harris Upham & Co., Inc.*, 661 F.Supp. 543, 545 (D.N.J.1987).

Plaintiff contends that since plaintiff was required to sign the application containing the arbitration clause in order to pursue her profession, she had no input into negotiation of the content of the Uniform Application and the NYSE Agreement, and hence her ADEA claim should not be subject to the arbitration clause. The United States District Court for the District of New Jersey expressly rejected the identical claim in *Steck, supra,* relying on *Barrowclough v. Kidder, Peabody & Co., Inc.,* 752 F.2d 923, 938 (3d Cir.1985). The district court of New Jersey held that the arbitration clause contained in the NYSE Agreement is not invalid merely because it is required by all registered brokers. This court concurs.

Hence, the court agrees with the district court for New Jersey and concludes that the ADEA claim falls within the arbitration provision at issue.

### C. *Congressional Intent*

■ The real issue is whether the right to have an ADEA claim adjudicated in federal court may be waived by an agreement to arbitrate. The parties have cited three federal district court cases considering this issue: *Steck, supra; Horne v. New England Patriots Football Club, Inc.,* 489 F.Supp. 465 (D.Mass.1980); and *Pihl v. Thomson McKinnon Securities, Inc.,* No. 87–7632, 1988 WL 54036, 1988 U.S.Dist. Lexis 4768 (E.D.Pa. May 23, 1988). *Steck* and *Horne* hold that an ADEA claim is not arbitrable; *Pihl* enforces an arbitration

clause with respect to an ADEA claim. This court must decide which of these cases to follow.

The burden of showing that Congress intended to preclude a waiver of judicial remedies for the statutory rights at issue is on the party opposing arbitration. *Shearson/American Express, Inc. v. McMahon*, 482 U.S. 220, 107 S.Ct. 2332, 2337, 96 L.Ed.2d 185 (1987). We find that no such showing has been made. We can find no evidence in the legislative history of the ADEA that Congress intended to preclude a waiver of judicial remedies for ADEA violations in favor of arbitration, nor have the parties cited any evidence to us. While the court in *Steck* claims to have found evidence of such congressional intent, we believe its conclusion that such evidence exists is based upon an erroneous interpretation of prior case law.

In *Steck*, the district court noted the similarities between Title VII and the ADEA and concluded that Congress' intent was that the ADEA be treated like Title VII with respect to whether rights could be prospectively waived. The court then relied on the Supreme Court ruling in *Alexander v. Gardner–Denver Co.*, 415 U.S. 36, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974), as evidence that Congress intended that Title VII rights not be susceptible to prospective waivers. *Steck*, 661 F.Supp. at 545. However, *Alexander* involved the issue of whether a union, *through a collective bargaining agreement*, could waive an individual employee's right to a judicial remedy of his Title VII rights, *not* whether the individual himself could prospectively waive such rights.

The *Steck* court also noted that Congress intended the ADEA to be enforced in accordance with the powers, remedies, and procedures of the Fair Labor Standards Act of 1988 ("FLSA"), 29 U.S.C. § 201, *et seq.*, 661 F.Supp. at 545. *See also Lorillard v. Pons*, 434 U.S. 575, 584, 98 S.Ct. 866, 872, 55 L.Ed.2d 40 (1978). It therefore supported its inference that Congress intended to prohibit a waiver of the right to a judicial remedy under the ADEA with *Barrentine v. Arkansas–Best Freight System,*

*Inc.*, 450 U.S. 728, 101 S.Ct. 1437, 67 L.Ed.2d 641 (1981), in which the Supreme Court held that a claim under the Fair Labor Standards Act should not be deferred to arbitration. 661 F.Supp. at 546. However, *Barrentine*, like *Alexander, supra*, involved the issue of whether an individual's judicial remedy could be waived by a union when the union agreed to a collective bargaining agreement providing for arbitration. Hence, that case also provides no insight into the question of whether Congress intended to prohibit the individual *himself* from waiving his right to a judicial remedy.

Thus, nothing in the ruling of the district court in *Steck* provides any evidence that Congress intended to prohibit individuals from waiving their right to a judicial remedy for ADEA violations in favor of arbitration of their claims. *Horne v. New England Patriots Football Club*, 489 F.Supp. 465 (D.Mass.1980), also provides no support for a finding of congressional intent against arbitration. That case, decided prior to *Mitsubishi, supra*, held that an ADEA claim was not arbitrable, citing *Alexander, supra*. The court seemed to rely primarily on the idea that one cannot waive by contract a statutory protection enacted for the benefit of a particular group. 489 F.Supp. at 470. *Mitsubishi* has clearly put this idea to rest. Hence, the *Horne* case provides little guidance since it was prior to the Supreme Court's ruling in *Mitsubishi* and fails to make the relevant analysis of congressional intent with respect to the specific statute at issue, the ADEA.

We find the reasoning of the United States District Court for the Eastern District of Pennsylvania more persuasive. In *Pihl v. Thomson McKinnon Securities, Inc.*, No. 87–7632 (May 24, 1988), Judge Kelly held that Congress demonstrated no intent to exclude ADEA claims from the dictates of the Arbitration Act. *Id.* at 5–6. We agree. The legislative history of the ADEA demonstrates a congressional intent in favor of informal methods of dispute resolution. Section 626(d) of the ADEA requires ADEA claims to first be submitted to the EEOC so that the agency may "seek to eliminate any alleged unlawful practice

844

by informal methods of conciliation, conference, and persuasion," 29 U.S.C. § 626(d). This provision indicates a congressional intent to avoid court proceedings where possible in favor of informal dispute resolution proceedings. We therefore concur with Judge Kelly and find no congressional intent against the waiver by an individual, through an individual agreement, of his right to the judicial resolution of an ADEA claim.

■ We find no injustice in requiring Ms. Garfield to arbitrate her claim pursuant to her agreement with her employer. The agreement to arbitrate does not deprive her of a remedy if she has, in fact, been discriminated against. The arbitrator will adjudicate her claim. The issue before the arbitrator is not a complicated statutory question requiring substantial legal expertise. Rather, the arbitrator must determine whether, but for Ms. Garfield's age, Thomson McKinnon would have terminated her employment. We think that an arbitrator is capable of making such a determination and, accordingly, dismiss this case and order the parties to submit to arbitration pursuant to their agreement.

### Conclusion

The motion of Thomson McKinnon Securities, Inc. to dismiss and to compel arbitration is hereby granted. The parties are instructed to submit to arbitration pursuant to their agreement.