OPINION OF THE COURT
Myriam J. Altman, J.
The issue on this motion is whether plaintiff’s claim of wrongful discharge based on physical disability is exempt from the broad arbitration clause of her employment contract.
Defendants Josephthal and Company, Inc. (Josephthal) and Daniel Flanagan move: (1) pursuant to CPLR 7503 (a) and the Federal Arbitration Act (9 USC § 1 et seq.) to stay this action *612 and compel arbitration of plaintiff’s claims against Josephthal; (2) pursuant to CPLR 3211 (a) (7) to dismiss the complaint against Flanagan for failure to state a cause of action, or in the alternative, to compel arbitration of the claims against Flanagan; and (3) for an order awarding Josephthal costs.
Plaintiff was hired by defendant Josephthal as a vice-president in transportation research on or about March 11, 1987. As a condition of employment, she executed an application and agreement for approval as a registered representative pursuant to the rules of the National Association of Securities Dealers, Inc. (NASD) and the New York Stock Exchange (NYSE) in which she agreed to arbitrate "any dispute, claim or controversy” that might arise between her and Josephthal as required by the rules, constitutions or bylaws of the organizations with which she was registered. Plaintiff was registered with both the NASD and the NYSE.
In or about January 1988, plaintiff was diagnosed as having breast cancer and was hospitalized for treatment. When she returned to work on March 1, 1988, she was discharged. Plaintiff alleges that her termination was based solely on her physical condition and was, therefore, illegal and discriminatory.
The complaint contains five causes of action. The first cause of action alleges that defendants violated section 296 of the Human Rights Law by terminating plaintiff’s employment because she had breast cancer. Section 296 (1) (a) of the Human Rights Law (Executive Law art 15) prohibits an employer from discharging an individual because of age, race, creed, color, national origin, sex, disability or marital status. The second cause of action alleges that defendants breached an implied contract of employment which imposed an obligation of good faith and fair dealing. In her third cause action, plaintiff claims that defendants terminated her employment in violation of an agreement made on February 19, 1988 whereby she agreed to a temporary reduction in pay based on defendants’ promise that they would not terminate her. The fourth cause of action is for wrongful discharge and the fifth cause of action for intentional infliction of emotional harm.
Rule 347 of the NYSE mandates that any controversy between a registered representative and any member "arising out of the employment or termination of employment of such registered representative by and with such member” be settled by arbitration at the request of any such party. The *613 NYSE Constitution and the NASD Code of Arbitration Procedure also require arbitration of disputes between members or between a member and an associated person. Plaintiffs agreement to arbitrate pursuant to these rules contemplates matters such as the performance of her duties as an employee and the termination of her employment (Flanagan v Prudential-Bache Sec., 67 NY2d 500, cert denied 479 US 931).
Arbitration agreements are favored in law and are to be broadly construed (Coudert v Paine Webber Jackson & Curtis, 705 F2d 78). Although arbitration is a favored and efficacious method of dispute resolution, the New York courts have fashioned a few narrow exceptions to that general rule when the issue involves a strong public policy "amounting to gross illegality or its equivalent”, generally found in a "readily identifiable source in the statutes or common-law principles” (Matter of Port Washington Union Free School Dist. v Port Washington Teachers Assn., 45 NY2d 411, 422). The public policy prohibiting arbitration bars "in an absolute sense, particular matters being decided or certain relief being granted by an arbitrator” (Matter of Sprinzen [Nomberg], 46 NY2d 623, 631). The rationale for the public policy exception is the possibility of inconsistent decisions by arbitrators who are not bound by law and may rely on their own sense of equity on matters of important public concern resulting in adverse consequences for the public in general (Matter of Aimcee Wholesale Corp. [Tomar Prods.], 21 NY2d 621). A claim of sex discrimination is an issue which has been found to be a matter for the courts and not arbitration (Matter of Wertheim & Co. v Halpert, 65 AD2d 724, affd 48 NY2d 681).
Notwithstanding the existence of State policy exempting some matters such as discrimination claims from arbitration, defendants maintain that Federal law requires arbitration of this dispute. Plaintiffs agreement to arbitrate is governed by the Federal Arbitration Act (9 USC § 1 et seq.) because her employment involved transactions in commerce (see, Flanagan v Prudential-Bache Sec., supra; 9 USC § 2; see also, Southland Corp. v Keating, 465 US 1). The Act "creates a body of federal substantive law” which governs arbitration agreements covered by its terms (Moses H. Cone Hosp. v Mercury Constr. Corp., 460 US 1, 25, n 32). Therefore, State courts "are bound to apply the statute as interpreted by Supreme Court decision or, absent such, in accordance with the rule established by lower Federal courts if they are in agreement” (Flanagan v Prudential-Bache Sec., supra, at 506). Where there is disagree *614 ment among the lower Federal courts, a New York State court is not bound by a ruling of any particular Federal court, even a decision from the Second Circuit Court of Appeals (supra, at 506).
The Supreme Court in Mitsubishi Motors v Soler Chrysler-Plymouth (473 US 614) analyzed when a claim of a statutory violation, as is present in this case, is arbitrable. Underlying the enactment of the Federal Arbitration Act is a Federal policy which favors arbitration and guarantees the enforcement of private agreements to arbitrate (supra, at 625). That policy requires the rigorous enforcement of arbitration agreements (Dean Witter Reynolds v Byrd, 470 US 213, 221).
The Mitsubishi court found no reason to depart from those principles when statutory claims are involved and therefore declined to find an implied presumption against arbitration of statutory claims in contracts governed by the Act (Mitsubishi Motors v Soler Chrysler-Plymouth, supra, at 625). Recognizing, however, that not all statutory claims are suitable for arbitration, it instructed the courts to examine the "congressional intention expressed in some other statute * * * to identify any category of claims as to which agreements to arbitrate will be held unenforceable” (supra, at 627). Thus, arbitration is mandated "unless Congress itself has evinced an intention to preclude a waiver of judicial remedies for the statutory rights at issue” (supra, at 628). The two-part test approved in Mitsubishi involves a determination of: (1) whether the arbitration agreement includes statutory claims; and (2) if so, "whether legal constraints external to the parties’ agreement foreclose * * * the arbitration of those claims” (supra, at 628).
The broad arbitration agreement involved here (see, Flanagan v Prudential-Bache Sec., supra) does not exclude statutory claims. Since plaintiffs discrimination claim arises out of the termination of her employment, it is encompassed by the arbitration agreement (see, Steck v Smith Barney, Harris Upham & Co., 661 F Supp 543). The question, then, is whether there are external legal constraints which preclude arbitration of plaintiffs discrimination claim.
In enacting the Federal Arbitration Act, Congress "withdrew the power of the states to require a judicial forum for the resolution of claims which the contracting parties agreed to resolve by arbitration” (Southland Corp. v Keating, supra, at 10). The rigorous enforcement of arbitration agreements mandated by the Act is not to be limited or constrained by *615 State law (supra, at 11, 13). Therefore, it is Federal and not State law which must provide the "legal constraints,” if any, to enforcement of this arbitration agreement (see also, Mitsubishi Motors v Soler Chrysler-Plymouth, supra).
In a case alleging racial discrimination brought pursuant to title VII of the Federal Civil Rights Act of 1964 (42 USC § 2000e et seq.), the Supreme Court found that "Congress intended federal courts to exercise final responsibility for enforcement of Title VII” (Alexander v Gardner-Denver Co., 415 US 36, 56). Although plaintiff in Alexander had proceeded to arbitration under the nondiscrimination clause in his collective bargaining agreement, he was not precluded from bringing a subsequent action in Federal court based on title VII. Deferral to arbitration in such a case would be inconsistent with congressional intent to prohibit waiver of judicial remedies in a title VII case (supra, at 56; see also, Swenson v Management Recruiters Intl., 858 F2d 1304, 1306). "In such cases, the private litigant not only redresses his own injury but also vindicates the important congressional policy against discriminatory employment practices” (Alexander v Gardner-Denver Co., supra, at 45).[1]
Congressional intent that judicial remedies be guaranteed has also been found in cases involving a violation of section 510 of the Employee Retirement Income Security Act of 1974 (29 USC § 1140) (Gavalik v Continental Can Co., 812 F2d 834) and an age discrimination claim under the Age Discrimination in Employment Act of 1967 (29 USC § 621 et seq.) (Steck v Smith Barney, Harris Upham & Co., supra). In those cases, the statutory claims were analogized to discrimination claims brought pursuant to title VII.
While finding that the Federal age discrimination claim in Steck (supra) was not arbitrable, the District Court (Dist NJ) felt constrained by Dean Witter (supra) to require arbitration of a parallel State statutory age discrimination claim. In Dean Witter, the Supreme Court compelled arbitration of pendent State law claims although Federal securities law claims would be litigated in Federal court because the Federal Arbitration Act requires enforcement of arbitration agreements "even if *616 the result is 'piecemeal’ litigation, at least absent a countervailing policy manifested in another federal statute” (supra, at 221). Therefore, the Steck court concluded that where a State statutory violation is alleged no congressional intent is involved and arbitration is required (see also, Genesco, Inc. v Kakiuchi & Co., 815 F2d 840, 844).
The Eighth Circuit Court of Appeals in Swenson (supra), however, did not read Mitsubishi (supra) and Dean Witter (supra) so narrowly and also noted that those cases did not involve employment discrimination claims. Relying on Alexander (supra) and the legislative history of title VII, the court concluded that both Federal and State claims of sex and race discrimination should be resolved in a judicial forum. In examining the legislative history of title VII, it found a "mixed federal-state scheme” of enforcement evincing "a congressional intent to allow individuals to pursue independently one’s rights under other applicable state and federal statutes” in court (supra, at 1308). The court specifically excluded any consideration of the State Legislature’s intent in enacting the State statute as irrelevant to its decision. Acknowledging the New Jersey District Court’s decision in Steck (supra), it distinguished that case because it did not involve a title VII discrimination claim. However, by refusing to compel arbitration of the State law claim, the Swenson court appears to have rejected the Steck court’s conclusion that congressional intent has no relevancy to the enforcement of a State statutory claim.
I find that the approach taken by the Eighth Circuit Court of Appeals is taken by the Eighth Circuit Court of Appeals is the preferable one as Mitsubishi (supra) and Dean Witter (supra) need not be read so narrowly or applied so broadly. Those cases do not appear to require abritration of a State statutory claim, provided some contrary congressional intent is expressed regarding the type of claim asserted. Generally, no congressional intent is expressed in the enactment of a particular State statute. Congress may, however, have evinced an intention to preclude arbitration of certain types of claims in the legislative history of a parallel Federal statute (see, Swenson v Management Recruiters Intl., supra). The court in Mitsubishi discussed the identification of "any category of claims as to which agreements to arbitrate will be held unenforceable” (emphasis added) as indicated by congressional intent (supra, at 627). Thus, there does not appear to be any reason to disregard clear congressional intent that certain *617 types of claims are not suitable for arbitration merely because those claims are asserted under a mirror image State statute.
Mitsubishi (supra) involved a Federal statutory claim arising from an international commercial transaction. The court did not discuss State claims as such claims were not in issue. While the two-pronged Mitsubishi test of arbitrability has consistently been applied in domestic cases (Shearson/American Express v McMahon, 482 US 220; Swenson v Management Recruiters Intl., supra; Gavalik v Continental Can Co., supra; Steck v Smith Barney, Harris Upham & Co., supra), the court in that case emphasized the importance of international concerns to its decision (Mitsubishi Motors v Soler Chrysler-Plymouth, supra, at 629).
As the Eighth Circuit Court of Appeals noted in Swenson (supra), Dean Witter (supra) was not an employment discrimination case. The issue in that case was "whether, when a complaint raises both federal securities claims and pendent state claims, a Federal District Court may deny a motion to compel arbitration of the state-law claims” (supra, at 214). Dean Witter did not seek to compel arbitration of the Federal claims because it assumed that such claims were not arbitrable.[2] Therefore, the court was not required to analyze congressional intent. There appears to have been an assumption that the State claims were arbitrable and the court then focused on the issue of whether it could bifurcate the proceedings. The court did not mandate that all State claims be arbitrated or that every case involving Federal and State claims be bifurcated (supra, at 218, n 5).
As to the issue in this case, there is no Federal intent to preclude a waiver of judicial remedies for employment discrimination claims based on disability. Title VII does not prohibit disability-based discrimination. While bills have been proposed to amend title VII to cover handicapped individuals and individuals with a history of cancer, such legislation has not been enacted (Canfield, Cancer Patients’ Prognosis: How Terminal Are Their Employment Prospects?, 38 Syracuse L Rev 801, 821-822 [1987]). The Rehabilitation Act of 1973 (29 USC § 701 et seq.) offers some protection to handicapped persons, but is applicable only to Federal agencies, Federal contractors and recipients of Federal funding (op. cit., at 814, *618 818). Since there is no Federal statute prohibiting disability-based discrimination by private employers, there is thus no congressional intent to exempt that category of claims from arbitration. Therefore, plaintiffs claims must be resolved in arbitration.[3] Even if her discrimination claim were not arbitrable, she would be compelled to arbitrate her remaining claims (see, Dean Witter Reynolds v Byrd, supra).
That branch of defendants’ motion seeking to dismiss the complaint against Flanagan is granted. Plaintiff has not alleged any specific acts or conduct by Flanagan that individually implicate him in plaintiffs discharge. In fact, plaintiff fails to allege anything specific against him.
"A corporate officer is not personally liable for causing the corporation to terminate an employment contract 'unless his activity involves individual separate tortious acts’ ” (Robbins v Panitz, 61 NY2d 967, 969). Therefore, the complaint fails to state a cause of action against Flanagan.
Accordingly, defendants’ motion to stay this action and compel arbitration of plaintiffs claims against Josephthal and to dismiss the complaint against Flanagan is granted. Defendants’ application for costs is denied.

. While Alexander v Gardner-Denver Co. (415 US 36) was decided prior to Mitsubishi Motors v Soler Chrysler-Plymouth (473 US 614), it is not in conflict with the ruling in the subsequent case. Therefore, Mitsubishi does not appear to limit Alexander’s application (Gavalik v Continental Can Co., 812 F2d 834; Swenson v Management Recruiters Intl., 858 F2d 1304; Steck v Smith Barney, Harris Upham & Co., 661 F Supp 543).

. Subsequently, the Supreme Court held that claims brought under section 10 (b) of the Securities Exchange Act of 1934 are subject to arbitration (Shearson/American Express v McMahon, 482 US 220).

. I leave for another time a determination of whether the discharge of a woman because she has breast cancer constitutes sex-based discrimination. The bleak statistics indicate that breast cancer occurs in approximately 1 woman in 10 (United States Dept of Health & Human Services Publication, Public Health Service, Federal Drug Administration [May 1986]). An analysis of the number of women in the work force who are within this profile may well disclose that this is a sex-based issue. On the other hand, the fact that breast cancer, although rarely, also occurs in men may foreclose such a claim.