## In re DAVID'S SUPERMARKETS, INC.

No. 10–01–011–CV.

Court of Appeals of Texas, Waco.

April 11, 2001.

Jay Marshall Wallace, Bryan Perkins, Gibson, McClure, Wallace & Daniels, Dallas, for appellant.

Roger E. Aldrich, Jr., John Fergus Murphy, Gardner, Aldrich & Murphy, L.L.P., Fort Worth, Gregg Hill, Sims, Moore, Hill & Gannon, L.L.P, Hillsboro, for appellee.

Before Chief Justice DAVIS, Justice VANCE, and Justice GRAY.

## OPINION

DAVIS, Judge.

Dennis Taylor filed suit against his employer David's Supermarkets, Inc. ("David's") for damages he sustained from work-related injuries. David's filed a motion to compel arbitration of Taylor's claims pursuant to the company's dispute resolution plan. Respondent, the Honorable F.B. McGregor, Jr., Judge of the 66th District Court of Hill County, denied the motion. David's seeks a writ of mandamus from this Court compelling Respondent to send Taylor's case to arbitration.

## BACKGROUND

When Taylor became a David's employee in February 1999, the company provided him copies of its Dispute Resolution Plan and its Occupational Injury Benefits Program. David's Dispute Resolution Plan (the "Plan") governs **"any and all** disputes between [David's] and its Employees." The Plan provides for the appointment by David's of a "Plan Director" who administers the Plan. An employee must notify the Plan Director in writing of any "on-the-job injury immediately or as

soon as is reasonably practical." The Plan Director must review the claim and act on it within forty-five days after receipt, subject to one forty-five day extension in specified circumstances.

If the Plan Director denies the claim, the employee must apply with the Plan Director for a review of that denial. If the Plan Director again denies the claim, the employee may appeal that decision to a Review Committee appointed by David's.[1] If the Review Committee rejects the claim, the employee may then pursue nonbinding mediation. If mediation does not result in a satisfactory resolution, the employee may pursue binding arbitration. According to David's Rules of Mediation and Arbitration, the employee bears one-half the costs of arbitration, exclusive of attorney's fees.[2] The Federal Arbitration Act (the "FAA") governs this arbitration.

David's does not maintain workers' compensation insurance. Instead, it provides compensation for work-related injuries through its Occupational Injury Benefits Program (the "Benefits Program"). The Benefits Program pays 100 percent of covered medical expenses up to $150,000.00 per incident for as many as fifty-two weeks.[3] The Benefits Program requires an employee to notify his supervisor of a work-related injury **"immediately** *upon the occurrence of the injury."* A request for benefits is submitted to "the Committee" at that time.[4] If benefits are denied, an employee may appeal that denial to the Committee. According to the terms of the

---

1. The employee may appoint 2 persons to the Review Committee. The Plan does not specify the total number of persons who comprise this committee.

2. David's pays the costs of the nonbinding mediation, "less three (3) days wages of the Employee (not to exceed $250.00)." David's does not pay attorney's fees incurred by the employee in the mediation process.

3. If more than one employee suffers injury in a single occurrence, this $150,000.00 is divided among the injured employees.

4. According to the Benefits Program, the "Committee" is a "committee of individuals appointed by the Company to administer the Plan."

Benefits Program, "The Committee has discretionary and final authority to interpret and implement the provisions of the [Benefits Program]." Presumably, an employee who is dissatisfied with the Committee's final decision on a request for benefits can then seek review of the matter under the terms of David's Dispute Resolution Plan.[5]

Taylor alleges in his petition in the underlying lawsuit that he suffered an on-the-job injury on or about August 13, 1999. He claims that when he reported this injury he was sent to "the company doctor" who ordered an x-ray but refused to have an MRI done because of the cost. The doctor sent Taylor back to work wearing a back brace. Taylor further alleges:

> On or about December 23, 1999, Plaintiff's legs went numb. This time, Plaintiff sought medical care from a physician of his own choosing. An MRI and x-rays revealed that Plaintiff had two ruptured disks as well as a broken fusion, which fusion had been performed in 1985.

Taylor filed suit on July 3, 2000. David's filed the motion to compel arbitration on October 10. Taylor contended in his November 16 response that arbitration in this case is against public policy because the benefits provided under David's Benefits Program are significantly less than those provided by the Texas workers' compensation system. Respondent heard David's motion on November 21 and de-

nied the motion by written order signed December 16. David's filed this original proceeding on January 12, 2001.

## THE FEDERAL ARBITRATION ACT

■ Taylor does not dispute the applicability of the FAA to disputes arising under the Dispute Resolution Plan. The FAA manifests "a liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary." *Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24, 103 S.Ct. 927, 941, 74 L.Ed.2d 765 (1983); *accord Cantella & Co., Inc. v. Goodwin*, 924 S.W.2d 943, 944 (Tex.1996) (orig.proceeding).

■ To decide whether a dispute must be arbitrated under the FAA, a court must determine: (1) whether a valid arbitration agreement exists; (2) whether the dispute falls within the scope of that arbitration agreement; and (3) "whether legal constraints external to the parties' agreement foreclose[ ] the arbitration of those claims."[6] *Webb v. Investacorp, Inc.*, 89 F.3d 252, 258 (5th Cir.1996) (quoting *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.*, 473 U.S. 614, 628, 105 S.Ct. 3346, 3355, 87 L.Ed.2d 444 (1985)).

■ Under the first step of this analysis, a party may challenge the validity of an arbitration agreement under general

---

**5.** The Benefits Program expressly notifies employees of their rights under the Employee Retirement Income Security Act of 1974 ("ERISA"), including the right to sue in state or federal court if a benefit claim "is denied or ignored in whole or in part...."

**6.** The federal courts refer to this as a "two-step inquiry." *See, e.g., Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.*, 473 U.S. 614, 628, 105 S.Ct. 3346, 3355, 87 L.Ed.2d 444 (1985); *Webb v. Investacorp, Inc.*,

89 F.3d 252, 257–58 (5th Cir.1996). Nonetheless, the Fifth Circuit divides the first of these two steps into "two considerations: (1) whether there is a valid agreement to arbitrate between the parties; and (2) whether the dispute in question falls within the scope of that arbitration agreement." *Webb*, 89 F.3d at 258. Because these "two considerations" involve distinct issues, we list them as the first two of a three-part inquiry.

contract law principles.[7] *See* 9 U.S.C.A. § 2 (West 1999); *Allied–Bruce Terminix Companies v. Dobson,* 513 U.S. 265, 281, 115 S.Ct. 834, 843, 130 L.Ed.2d 753 (1995); *In re Oakwood Mobile Homes, Inc.,* 987 S.W.2d 571, 573 n. 3 (Tex.1999) (orig.proceeding). The second step focuses on the breadth of the arbitration agreement to determine whether the parties' dispute comes within its reach.

■■ Regarding the third step of the analysis, the Supreme Court has explained that the only "legal constraints external" to the arbitration agreement which are of significance are those evidencing "a contrary congressional command." *Shearson/Am. Express, Inc. v. McMahon,* 482 U.S. 220, 226, 107 S.Ct. 2332, 2337, 96 L.Ed.2d 185 (1987); *see also Mitsubishi Motors,* 473 U.S. at 627–28, 105 S.Ct. at 3354–55; *In re Conseco Fin. Servicing Corp.,* 19 S.W.3d 562, 571 (Tex.App.—Waco 2000, orig. proceeding); *In re Van Blarcum,* 19 S.W.3d 484, 490 (Tex.App.—Corpus Christi 2000, orig. proceeding [mand. filed] ).[8]

Like any statutory directive, the Arbitration Act's mandate may be overridden by a contrary congressional command. The burden is on the party opposing arbitration, however, to show that Congress intended to preclude a waiver of judicial remedies for the statutory rights at issue. If Congress did intend to limit or prohibit waiver of a judicial forum for a particular claim, such an intent "will be deducible from [the statute's] text or legislative history," or from an inherent conflict between arbitration and the statute's underlying purposes.

*Shearson/Am. Express,* 482 U.S. at 226–27, 107 S.Ct. at 2337–38 (quoting *Mitsubishi Motors,* 473 U.S. at 628, 105 S.Ct. at 3354) (citations omitted).

■ Because the third step of the inquiry focuses on conflicting federal legislation, a contention that federally-mandated arbitration runs afoul of a state statutory scheme is generally irrelevant.[9] *See Swenson v. Management Recruiters Int'l, Inc.,* 858 F.2d 1304, 1309 (8th Cir.1988), *overruled on other grounds by Gilmer v. Interstate/Johnson Lane Corp.,* 500 U.S. 20, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991); *DeSapio v. Josephthal & Co., Inc.,* 143 Misc.2d 611, 616, 540 N.Y.S.2d 932, 936

---

**7.** This is generally an issue for the court to resolve. However, if the parties' dispute arises from a contract which contains an arbitration clause, a challenge to the contract as a whole under general contract law principles must be resolved by the arbitrator. *See Prima Paint Corp. v. Flood & Conklin Mfg. Co.,* 388 U.S. 395, 404, 87 S.Ct. 1801, 1806, 18 L.Ed.2d 1270 (1967). Conversely, if a party challenges only the arbitration clause under these principles, the court may determine the validity of the arbitration clause. *Id.* at 403–04, 87 S.Ct. at 1806.

**8.** In *Van Blarcum,* the court of appeals held that the provisions of the Magnuson Moss Act override the Federal Arbitration Act because in the former "Congress has prohibited the inclusion in written warranties of clauses calling for binding arbitration." *In re Van Blarcum,* 19 S.W.3d 484, 491 (Tex.App.—Corpus

Christi 2000, orig. proceeding [mand. filed] ) (quoting *Southern Energy Homes, Inc. v. Lee,* 732 So.2d 994, 1000 (Ala.1999)). On January 10, 2001, the Supreme Court heard argument on the mandamus petitions filed by the *Van Blarcum* real parties in interest (American Homestar of Lancaster, Inc. and Nationwide Housing Systems, Inc.). *See In re American Homestar of Lancaster, Inc.,* No. 00–0722, 44 Tex.Sup.Ct.J. 22 (Oct. 19, 2000) (setting case for argument).

**9.** We note that the Supreme Court has quite recently declined to consider an argument presented by 22 state attorneys general and others in *amicus curiae* briefs that the FAA should not be permitted to pre-empt state employment laws. *See Circuit City Stores, Inc. v. Adams,* 532 U.S. ——, 121 S.Ct. 1302, 1312–13, —— L.Ed.2d. —— (2001).

(N.Y.Sup.Ct.1989). This is so because the Supremacy Clause of the United States Constitution dictates that the FAA "takes precedence over state attempts, legislative or judicial, to undercut the enforceability of arbitration agreements." *In re Turner Bros. Trucking Co.*, 8 S.W.3d 370, 374 (Tex.App.—Texarkana 1999, orig. proceeding [mand.. denied]); *accord Perry v. Thomas*, 482 U.S. 483, 492 n. 9, 107 S.Ct. 2520, 2527 n. 9, 96 L.Ed.2d 426 (1987) (citing *Southland Corp. v. Keating*, 465 U.S. 1, 10–11, 104 S.Ct. 852, 858, 79 L.Ed.2d 1 (1984)); *Jack B. Anglin Co. v. Tipps*, 842 S.W.2d 266, 271 (Tex.1992) (orig.proceeding); *Conseco Fin. Servicing*, 19 S.W.3d at 571.

Nevertheless, there is some authority for the proposition that a state-based claim with a parallel federal underpinning is not arbitrable if the parallel federal statutory scheme reflects a congressional intent that such claims not be arbitrated. *See, e.g., Duffield v. Robertson Stephens & Co.*, 144 F.3d 1182, 1187 n. 3 (9th Cir.), *cert. denied*, 525 U.S. 982, 119 S.Ct. 445, 142 L.Ed.2d 399 (1998); *Swenson*, 858 F.2d at 1309; *DeSapio*, 143 Misc.2d at 616, 540 N.Y.S.2d at 936.

## APPLICATION

■ David's contends that the trial court abused its discretion by refusing to send Taylor's case to arbitration. Mandamus will issue to compel arbitration when a court has abused its discretion by denying a party the right to arbitrate under the FAA. *See In re L & L Kempwood Assocs.*, 9 S.W.3d 125, 128 & n. 18 (Tex.1999) (citing *Jack B. Anglin Co.*, 842 S.W.2d at 271–73).

Before Respondent, Taylor relied on a decision by the federal district court in Galveston involving a similar factual scenario. *See Strawn v. AFC Enters., Inc.*, 70 F.Supp.2d 717 (S.D.Tex.1999), *vacated*, 240 F.3d 1074 (5th Cir.2000) (opinion not designated for publication). In *Strawn*, the district court followed the *Webb* three-step analysis and concluded: (1) the arbitration agreement at issue was otherwise valid; and (2) the claims at issue were within the scope of the arbitration agreement; but (3) "the agreement [wa]s void as contrary to Texas public policy with respect to the workers' compensation system." *Strawn*, 70 F.Supp.2d at 722 (citing *Webb*, 89 F.3d at 257–58). As indicated however, the Fifth Circuit vacated the district court's ruling in an unpublished opinion.

Like the plaintiff in *Strawn*, Taylor does not seriously question the validity of the Dispute Resolution Plan or its applicability to on-the-job injuries. Instead, he contends that Texas public policy as manifested in the workers' compensation statutes prohibits the arbitration of his claims. We construe this as an assertion that "legal constraints external to the parties' agreement foreclose[ ] the arbitration of those claims." [10] *Mitsubishi Motors*, 473 U.S. at 628, 105 S.Ct. at 3355; *Webb*, 89 F.3d at 258.

"The burden is on the party opposing arbitration, however, to show that *Congress* intended to preclude a waiver of judicial remedies for the statutory rights at issue." *Shearson/Am. Express*, 482 U.S. at 226–27, 107 S.Ct. at 2337 (emphasis added); *see also Conseco Fin. Servicing*, 19 S.W.3d at 571; *Van Blarcum*, 19 S.W.3d at 490. Any public policy expressed by the Texas Legislature in enacting the workers' compensation statutes is

---

**10.** Taylor confirms that this is the essence of his argument in a post-submission letter brief.

*See* 10TH TEX.APP.(WACO) LOC.R. 16(f).

irrelevant to this inquiry.[11] *See Swenson,* 858 F.2d at 1309; *DeSapio,* 143 Misc.2d at 616, 540 N.Y.S.2d at 936; *see also Perry,* 482 U.S. at 492 n. 9, 107 S.Ct. at 2527 n. 9; *Jack B. Anglin Co.,* 842 S.W.2d at 271; *Turner Bros. Trucking,* 8 S.W.3d at 374; *Conseco Fin. Servicing,* 19 S.W.3d at 571.

Moreover, even if the public policy allegedly expressed by the Texas workers' compensation statutes could somehow override the mandate of the FAA, the Supreme Court of Texas has recently declined to hold that employment contracts which require an employee to waive his common law right to sue an employer and accept benefits arguably inferior to those provided by the workers' compensation statutes are void as against public policy. *See Lawrence v. CDB Servs., Inc.,* 44 Tex.Sup. Ct.J. 555, 562, 2001 WL 299542, at *9 (2001). Thus, Taylor's public policy argument fails on its merits.

## CONCLUSION

David's Dispute Resolution Plan constitutes a valid arbitration agreement which expressly covers "on-the-job injuries" sustained by David's employees such as Taylor. Any public policy expressed by the Texas Legislature in the workers' compensation statutes does not manifest an intent by the United States Congress that claims such as Taylor's not be arbitrated. Accordingly, Respondent abused his discretion by denying David's motion to compel arbitration of Taylor's claims. David's has no adequate remedy at law. Thus, we conditionally grant the requested writ.

We direct Respondent to withdraw his order denying David's motion to compel arbitration and order that Taylor's claims be submitted to arbitration. The writ will issue only if Respondent fails to do so within fourteen days after this Opinion is delivered and filed.

---

**11.** Taylor does not cite any parallel federal statutory scheme, and we are aware of none. *Cf. Duffield v. Robertson Stephens & Co. .,* 144 F.3d 1182, 1187 n. 3 (9th Cir.), *cert. denied,* 525 U.S. 982, 119 S.Ct. 445, 142 L.Ed.2d 399 (1998); *Swenson v. Management Recruiters Int'l, Inc.,* 858 F.2d 1304, 1309 (8th Cir. 1988), *overruled on other grounds by Gilmer v. Interstate/Johnson Lane Corp.,* 500 U.S. 20, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991); *DeSapio v. Josephthal & Co., Inc.,* 143 Misc.2d 611, 616, 540 N.Y.S.2d 932, 936 (N.Y.Sup.Ct. 1989).